OPINION
David, Mary Jo, and Peter Batteiger (hereinafter collectively referred to as "the Batteigers") appeal from a judgment of the Miami County Court of Common Pleas, which granted summary judgment in favor of United States Fidelity and Guaranty Company ("U.S.F. G.").
On April 3, 1999, Carlos Corrello drove through a stop sign while intoxicated and collided with a vehicle driven by seventeen-year-old Sarah Ann Batteiger. The vehicle was owned by Sarah Ann's father, David Batteiger. Sarah Ann died as a result of injuries that she sustained in the collision. Her father is the administrator of her estate. Corrello's insurance company paid $25,000, which was the maximum liability coverage under Corrello's policy, to Sarah Ann's estate.
David and Mary Jo Batteiger are divorced. Sarah Ann and her brother Peter lived primarily with their mother, Mary Jo. Mary Jo is employed by Grandview Hospital, which has an automobile insurance policy with U.S.F. G. The policy was issued to Grandview on December 31, 1998.
On September 17, 1999, the Batteigers filed a declaratory judgment action against two insurance companies, which are not parties to this appeal. They amended their complaint on December 1, 2000, adding U.S.F. 
G. as a defendant. A second amended complaint was filed on June 13, 2001. U.S.F. G. filed a motion for summary judgment, and the trial court granted the motion on August 31, 2001.
The Batteigers raise one assignment of error on appeal:
 THE TRIAL COURT ERRED IN GRANTING U.S.F. G.'S MOTION FOR SUMMARY JUDGEMENT [SIC] AS IT FAILED TO INTERPRET ALL OF THE AMBIGUITIES IN THE INSURANCE CONTRACT AT ISSUE LIBERALLY IN FAVOR OF THE INSURED AND STRICTLY AGAINST THE INSURER AS REQUIRED BY LAW.
The issue presented for our review is whether the language of Grandview's insurance policy with U.S.F. G. excludes underinsured motorist coverage in this factual situation.
Initially, the parties agree that U.S.F. G. could exclude coverage in this situation under R.C. 3937.18(J), which provides:
 The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the insured and underinsured motorist coverages are provided.
Therefore, we must decide whether U.S.F. G.'s policy with Grandview did in fact exclude coverage.
Our decision is governed primarily by Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. U.S.F. G. argues that Scott-Pontzer is not the applicable law because the applicable policy in that case was issued prior to House Bill 261, which amended R.C. 3937.18
to add section (J), quoted above. House Bill 261 went into effect in 1997, and the policy at issue in Scott-Pontzer was issued sometime prior to 1994. Therefore, Scott-Pontzer was not interpreting House Bill 261. However, the supreme court in Scott-Pontzer specifically noted that an insurer could "draft policy language that provides varying arrays of coverage to any number of individuals." Id. at 664. Thus, the issue in that case, as in this one, was not whether the insurer could restrict coverage, but whether it had. The addition of section (J) to R.C. 3937.18
does not change this analysis. Therefore, we will apply Scott-Pontzer in deciding this case.
As in Scott-Pontzer, the declarations page of the U.S.F. G. policy states that "[t]hroughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." The named insured is Grandview Hopsital. The policy's uninsured motorist coverage form also contains language identical to that in Scott-Pontzer:
B. Who Is An Insured?
1. You.
2. If you are an individual, any "family member."
 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
In interpreting this language, the supreme court concluded that it was "reasonably susceptible of more than one interpretation" and therefore had to be "construed strictly against the insurer and liberally in favor of the insured." Scott-Pontzer, 85 Ohio St.3d at 664. The court noted that uninsured motorist coverage "was designed * * * to protect persons, not vehicles" and concluded that:
 [I]t would be reasonable to conclude that "you," while referring to [the corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons-including the corporation's employees.
Id.
As the policy language at issue in the case sub judice is identical to that in Scott-Pontzer, we must interpret "you" in the U.S.F. G. policy to include employees and therefore to include Mary Jo. Because the definition of an "insured" includes Mary Jo, it includes Sarah Ann as her family member under the definition above. See, also, Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557 (holding that minor son of insured's employee was entitled to underinsured motorists coverage under insured's commercial automobile insurance policy pursuant to the reasoning in Scott-Pontzer). Therefore, we find that Sarah Ann was an insured under the policy. We must now turn to an analysis of whether the insurance contract excluded coverage in this situation, where Sarah Ann was driving her father's car, which was not a covered auto.
We recognize that, under Scott-Pontzer and R.C. 3937.18(J), U.S.F. 
G. was permitted to draft its insurance policy to exclude coverage in this situation. Scott-Pontzer, 85 Ohio St.3d at 664. However, it was required to do so "with language that is clear and unambiguous and that comports with the requirements of the law." Id.
We find that the policy is ambiguous for several reasons. First, the declarations page of the policy states that "[e]ach of these coverages will apply only to those `autos' shown as covered `autos'" and lists uninsured and underinsured motorist coverage; however, the uninsured motorist coverage portion of the policy does not state that the insured must be in a covered auto. Second, the definition of "who is an insured" under the policy includes "you," "if you are an individual, any family member," and "anyone else occupying a covered auto." The third paragraph of this definition specifically states that the "anyone else" must be occupying a covered auto. However, the first two paragraphs, including the insured and family members, does not specifically state that the insured must be occupying a covered auto. This creates ambiguity as to whether the insured and family members must be occupying a covered auto. Finally, the uninsured motorist coverage form includes an exclusion section that would be meaningless if we were to read that portion of the policy to apply only to covered autos.
The "Exclusions" section of the uninsured motorist coverage form excludes:
5. "Bodily injury" sustained by:
 a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;
 b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or
 c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.
In construing insurance contracts, "[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." Id. at 665-66, citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 214. The factual scenario in this case does not fall under any of the above exclusions. Sarah Ann was not occupying a vehicle owned by either herself or her mother. She was occupying a vehicle owned by her father. While the policy could easily have been written to exclude this situation, it was not. U.S.F. G. chose to exclude the three situations above, and we must presume that this is a complete list of exclusions. While U.S.F. G. may argue that it should be obvious that coverage does not extend to this factual scenario, it wrote the policy in such a way as to make coverage ambiguous. The exclusions could have said "any family member while occupying or struck by any vehicle that is not a covered auto." For that matter, the policy could simply have stated that coverage was excluded for "any insured while occupying or struck by any vehicle that is not a covered auto." However, section (b), which is the closest fit to the situation we have here, specifically refers to any "family member while occupying or struck by any vehicle owned by that family member that is not a covered auto."
As the supreme court stated in Scott-Pontzer, "policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured." Id. at 665. Accordingly, we conclude that Sarah Ann was an insured under the U.S.F. G. policy, that she was covered by the underinsured motorist section of the policy, and that the policy did not exclude coverage for this factual situation.
We understand U.S.F. G.'s argument that, because Sarah Ann was not driving a covered auto, she was not covered by the policy. However, the policy is ambiguous in its uninsured motorist coverage. If we were to read the uninsured motorist portion of the policy to require the insured to be operating a covered auto, the exclusions cited above would be rendered meaningless. There would be no reason to exclude three specific situations involving a non-covered auto if all situations involving non-covered autos were excluded. Furthermore, the "who is an insured" section of the uninsured motorist portion of the policy suggests that the insured and family members do not have to be occupying a covered auto. At the very least, we find that the policy is ambiguous and reasonably open to different interpretations. Therefore, we must construe the policy "liberally in favor of the insured and strictly against the insurer." Id. Therefore, we hold that Sarah Ann's estate is entitled to recover under the uninsured motorist coverage provisions of Grandview's insurance policy with U.S.F. G.
The Batteigers' assignment of error is sustained.
The judgment of the trial court will be reversed and the matter remanded for the court to enter judgment consistent with this opinion.
BROGAN, J. and FAIN, J., concur.