**[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 660.]**

SCOTT-PONTZER, APPELLANT, *v.* LIBERTY MUTUAL FIRE INSURANCE

COMPANY ET AL., APPELLEES.

[Cite as *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 1999-Ohio-292.]

*Automobile liability insurance—Underinsured motorist coverage—R.C. 3937.18—*
*Scope of coverage of employer's commercial automobile liability policy*
*and umbrella/excess insurance policy for employee killed in accident.*

(No. 98-442—Submitted December 16, 1998—Decided June 23, 1999.)

Appeal from the Court of Appeals for Stark County, No. 1997CA00152.

————————————

{¶ 1} On July 10, 1994, Christopher T. Pontzer was driving an automobile owned by his wife, Kathryn Scott-Pontzer, appellant. Pontzer was killed when the vehicle he was driving collided with a motor vehicle driven by Troy W. Taylor. The collision was caused by the negligence of Taylor. Taylor was insured under a policy of automobile liability insurance with limits of $100,000 per person and $300,000 per accident.

{¶ 2} Before his death, Pontzer was an employee of Superior Dairy, Inc. At the time of the accident, Superior Dairy was insured under a policy of commercial automobile liability insurance with Liberty Mutual Fire Insurance Company ("Liberty Fire"). Superior Dairy's policy of insurance with Liberty Fire contained a provision for underinsured motorist coverage. In addition to the liability policy provided by Liberty Fire, Superior Dairy also had in effect at the time of Pontzer's death an "umbrella/excess" insurance policy with Liberty Mutual Insurance Company ("Liberty Mutual").

{¶ 3} On July 9, 1996, appellant brought, in the Court of Common Pleas of Stark County, an action as surviving spouse and executor of her husband's estate against Liberty Fire and Liberty Mutual. In the complaint appellant alleged that

because her husband was an employee of Superior Dairy, she was entitled to the underinsured motorist benefits under Superior Dairy's automobile liability policy with Liberty Fire. Appellant also contended that she was entitled to any benefits accruing under Superior Dairy's umbrella policy with Liberty Mutual. On April 16, 1997, the trial court granted summary judgment in favor of Liberty Fire and Liberty Mutual. The trial court determined that, according to the policy language of the Liberty Fire policy, Pontzer was not a named insured and was not operating a "covered" automobile. The trial court further found that, for purposes of the Liberty Fire policy, no "insured" sustained "bodily injuries." Thus, the trial court concluded that appellant was not entitled to underinsured motorist benefits from Superior Dairy's commercial liability policy with Liberty Fire. The trial court also concluded that appellant's husband was not an executive officer, director, stockholder, or an employee acting within the scope of his employment, and thus he was not an insured according to the terms of Superior Dairy's umbrella policy. The trial court therefore held that appellant did not qualify for benefits under Superior Dairy's umbrella/excess insurance policy issued through Liberty Mutual.

{¶ 4} On appeal, the court of appeals affirmed the judgment of the trial court, but based its decision on different reasons than those of the trial court. Specifically, the court of appeals determined that the policies in question were "ambiguous as to the 'insureds' under the underinsured motorist coverages."[1] The court of appeals concluded that, pursuant to our decision in *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, Pontzer, as an employee of

---

1. This language is slightly in error, since "underinsured motorist coverage" was not provided in the Liberty Mutual umbrella policy. In determining whether the decedent was an insured under the policies at issue, the court of appeals looked to the declarations page of both the Liberty Fire and the Liberty Mutual policies. The court of appeals noted that there was no declarations page for uninsured/underinsured motorist coverage in the Liberty Mutual umbrella/excess insurance policy because such coverage was not offered. The court of appeals correctly determined, and Liberty Mutual conceded, that such coverage was part of the umbrella/excess policy by operation of law pursuant to R.C. 3937.18.

Superior Dairy, was an insured under the policies issued by Liberty Fire and Liberty Mutual for purposes of underinsured motorist coverage. The court of appeals, however, held that underinsured motorist coverage under a corporate policy is available only to those employees injured while acting within the scope of their employment. Thus, the court of appeals concluded that since appellant's husband was not within the scope of his employment when the accident occurred, underinsured motorist coverage was not available to appellant under the policies issued to Superior Dairy.

{¶ 5} This matter is now before this court pursuant to the allowance of a discretionary appeal.

_____

*John S. Coury,* for appellant.

*Jan A. Saurman Law Offices* and *John V. Rasmussen,* for appellees.

*Allen Schulman, Jr.* and *Christopher J. Van Blargan,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

_____

**DOUGLAS, J.**

{¶ 6} The parties present us with three issues for our determination. The first issue is whether Pontzer, as an employee of Superior Dairy, was an "insured," for purposes of underinsured motorist coverage, under the policies issued to Superior Dairy by Liberty Fire and Liberty Mutual. If he was, then the second issue is whether Pontzer, for coverage to be afforded, would have had to be in the course of his employment at the time of the accident. The third question, which pertains only to the Liberty Mutual policy, is whether, after underinsured motorist coverage is inserted into a policy by operation of law, the exclusions in the policy that have been written in so as to apply to the coverage for liability also pertain to the underinsured coverage.

{¶ 7} If we find Pontzer was not an insured under the policies, then our inquiry is at an end. If we find that he was an insured, then we must proceed to the question of "scope of employment." If we find that for Pontzer to be covered he must have been in the scope of his employment, again our inquiry is at an end because it is stipulated that he was not. If, however, we find that Pontzer was an insured and that coverage ensued even though he was not in the course of his employment at the time of the occurrence of the accident, then our inquiry as to coverage under the Liberty Fire policy is ended (there would be coverage) and we then must proceed to whether Pontzer was also covered under the Liberty Mutual policy given that there is, in that policy, a "scope of employment" requirement.

{¶ 8} In discussing the foregoing, hereinafter "Liberty Fire" and "Liberty Mutual" will also be referred to jointly as "appellees," since they submitted a joint brief to this court.

## I. Liberty Fire Policy

{¶ 9} In regard to the commercial automobile liability policy issued through Liberty Fire, appellees argue that the court of appeals erred in concluding that Pontzer was an insured. Appellees contend that the Liberty Fire policy unambiguously shows that Superior Dairy was the only named insured, that Pontzer could not be considered an insured under any language in the policy, and that, therefore, appellant cannot claim entitlement to underinsured motorist benefits. We disagree.

{¶ 10} Regrettably, as so many of these types of cases do, this issue centers on construing certain words and phrases contained within the Liberty Fire policy. The declarations page of the Liberty Fire policy names Superior Dairy, Inc. as the named insured. The business auto coverage form of that policy states that "[t]hroughout this policy the words you and your refer to the [n]amed [i]nsured shown in the [d]eclarations." The policy also contains an Ohio uninsured motorist

coverage form that defines an "insured" for purposes of underinsured motorist coverage as follows:

"B. Who Is An Insured

"1. You.

"2. If you are an individual, any family member.

"3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."

{¶ 11} It is well settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. Appellees contend that the above-quoted policy language indicates the intent of the parties to the insurance contract to provide that Superior Dairy is the only named insured. According to appellees, the inclusion of the phrase "[i]f you are an individual, any family member" removes any doubt that "you" refers to Superior Dairy and, thus, that Superior Dairy is the sole named insured. In other words, appellees contend that by the insertion of this conditional language a distinction is made between "you" and an "individual," thereby clearly evincing the intent of the parties that the corporate entity, Superior Dairy, be the sole named insured. While that is one interpretation of the policy, it is not the only interpretation.

{¶ 12} In *King,* 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus, Chief Justice Moyer, speaking for the court, said that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."

(Citations omitted.) The language of the Liberty Fire policy under consideration here is, in our view, subject to various interpretations.

{¶ 13} Contrary to appellees' contentions, the policy language of the Liberty Fire policy can be interpreted to include company employees. Assuming *arguendo* that "you" does refer solely to Superior Dairy, this does not foreclose the inclusion of Pontzer as an insured under the policy. We note again, as we have often in the past, that uninsured motorist coverage, mandated by law pursuant to R.C. 3937.18, was designed by the General Assembly to protect persons, not vehicles. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, paragraph one of the syllabus. Since R.C. 3937.18 mandates underinsured as well as uninsured motorist coverage, obviously the same rationale applies to underinsured motorist coverage. It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without any regard to persons. See *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547. Rather, it would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons—including to the corporation's employees.

{¶ 14} We recognize that insurers can draft policy language that provides varying arrays of coverage to any number of individuals. However, in drafting contracts of insurance, insurers must do so with language that is clear and unambiguous and that comports with the requirements of the law. See *King,* 35 Ohio St.3d 208, 519 N.E.2d 1380, and *Martin,* 70 Ohio St.3d 478, 639 N.E.2d 438.

6

**{¶ 15}** We therefore agree with the court of appeals that the language in the Liberty Fire policy concerning the identity of "insureds" is ambiguous. Courts universally hold that policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured. Further, as we said in *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus, "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Accordingly, we conclude that Pontzer, at the time of his death, was an insured under the Liberty Fire policy for purposes of underinsured motorist coverage.

## II.  Liberty Mutual Policy

**{¶ 16}** We also conclude that Pontzer was an insured under the umbrella/excess policy issued to Superior Dairy through Liberty Mutual. Liberty Mutual failed to offer uninsured/underinsured motorist coverage under Superior Dairy's umbrella/excess insurance policy. Thus, unlike the Liberty Fire policy, the Liberty Mutual umbrella policy did not contain an uninsured motorist coverage form that defined insureds for purposes of underinsured motorist coverage.

**{¶ 17}** In *Duriak v. Globe Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 72, 28 OBR 168, 170, 502 N.E.2d 620, 622-623, we held that excess liability insurance must comport with R.C. 3937.18 and thus uninsured (and underinsured) motorist coverage must be tendered. Further, in *Gyori v. Johnston Coca-Cola Bottling Group* (1996), 76 Ohio St.3d 565, 568, 669 N.E.2d 824, 827, we stated that failure by the insurer to offer such coverage results in the provision of such coverage by operation of law. Absent any showing that underinsured coverage was offered and rejected, such coverage is included in the policy. Therefore, we conclude that Pontzer, as an employee of Superior Dairy, was also an insured under Superior

Dairy's umbrella/excess insurance policy and that said policy includes underinsured motorist coverage, as such coverage is mandated by operation of law.

### III. Scope of Employment

{¶ 18} Having concluded that Pontzer was an insured under both policies at issue, we must now determine whether appellant is entitled to underinsured motorist benefits. Appellant argues that the court of appeals erred when it determined that underinsured motorist benefits under both the Liberty Fire and Liberty Mutual policies would be available to appellant only if her husband was acting during the scope of his employment when he was killed. We agree with appellant.

{¶ 19} In *King v. Nationwide Ins. Co.*, 35 Ohio St.3d at 214, 519 N.E.2d at 1386, we noted that "[i]n the construction of insurance contracts, '[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.'" (Quoting *Home Indemn. Co. v. Plymouth* [1945], 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248, paragraph two of the syllabus.) The Liberty Fire policy contains no language requiring that employees must be acting within the scope of their employment in order to receive underinsured motorist coverage. Thus, we find that appellant is entitled to underinsured motorist benefits under the Liberty Fire policy.

{¶ 20} On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage. See, *e.g., Demetry v. Kim* (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001.

Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well.

## IV.

{¶ 21} We realize that the conclusion reached herein may be viewed by some as a result that was not intended by the parties to the insurance contracts at issue. Nonetheless, we believe that to adopt appellees' position in this matter would clearly produce absurd results. For instance, appellees' position is that only those employees occupying a "covered auto" are insureds under the Liberty Fire policy. Appellees' attorney conceded during oral argument that this position precluded coverage for employees driving their personal motor vehicles while acting during the scope of their employment. As a result, through the doctrine of *respondeat superior*, Superior Dairy would be potentially liable, without the protections afforded by automobile liability insurance (not to mention uninsured/underinsured motorist coverage), for tortious conduct by such employees. It could hardly have been the intent of Superior Dairy to place itself in such a precarious position. In any event, as the law is clear in this regard, we will not guess at the intent of the parties to the insurance contract when the insurer introduces ambiguous terms into the policy.

{¶ 22} Accordingly, we reverse the judgment of the court of appeals and we vacate the judgment of the trial court. We remand this matter to the trial court with instructions to enter judgment in favor of appellant on the issue of coverage as to both policies.

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

LUNDBERG STRATTON, J., dissents.

————————————

**COOK, J., dissenting.**

{¶ 23} I differ with the majority's UIM coverage analysis as to both policies. As to the commercial automobile policy, I would hold that it covers Superior Dairy's insurable interests. As to the excess policy, I would hold that even if UIM coverage is deemed provided by operation of law, it is provided to the named insured, Superior Dairy, but not to its off-duty employee.

The Commercial Auto Policy

{¶ 24} Despite the named insured ("you") being Superior Dairy, the majority finds coverage for an off-duty employee driving his wife's car by saying that because UIM coverage protects persons and not vehicles, and because corporations cannot drive cars or sustain injuries, UIM coverage cannot protect a corporate entity. But, of course, a corporate entity has insurable interests for which countless policies are issued every day. See, *e.g., Indemn. Ins. Co. of N. Am. v. Dow* (C.A.6, 1949), 174 F.2d 168, 169-170, citing *Wurzburg v. New York Life Ins. Co.* (1918), 140 Tenn. 59, 203 S.W. 332 (manufacturing company had an insurable interest in the life of its manager). See, also, R.C. 3911.091. This concept of Superior Dairy having corporate insurable interests defeats the majority's reasoning for extending coverage to the off-duty employee as an "insured." Though business entities like Superior Dairy operate through their employees, this employee was not acting for Superior Dairy at the time of this accident. So, there is no basis for saying he qualifies as an insured by virtue of his Superior Dairy employment.

{¶ 25} Moreover, public policy would prevent Superior Dairy from validly insuring its business against damages to Scott-Pontzer's personal automobile, or insuring against Scott-Pontzer's liability arising outside the scope of Superior Dairy's business. As a matter of public policy, the validity of an insurance contract is dependent upon the insured having an insurable interest in the subject of the

insurance. 1 Holmes, Appleman on Insurance 2d (1996) 555-557, Section 4.32. See, also, *id.* at 11-15, Section 1.3; *Phillips v. Cincinnati Ins. Co.* (1985), 60 Ohio St.2d 180, 181, 14 O.O.3d 413, 414, 398 N.E.2d 564, 565; *Great Am. Ins. Co. v. Curl* (App.1961), 88 Ohio Law Abs. 516, 517, 18 O.O.2d 481, 482, 181 N.E.2d 916, 918, citing 30 Ohio Jurisprudence 2d (1958) 305, Insurance, Section 305. An insurable interest exists when "the insured derives pecuniary benefit or advantage by the preservation or continued existence of the property or will sustain pecuniary loss from its destruction." 4 Appleman, Insurance Law and Practice (1969) 35, Section 2123; *Phillips*, 60 Ohio St.2d at 182, 14 O.O.3d at 415, 398 N.E.2d at 566. Here, Superior Dairy could incur no liability because of this employee's off-duty operation of his wife's car.

**{¶ 26}** Thus, no legitimate reason supports the judgment of the majority that this policy covers this employee's injuries in this accident; Scott-Pontzer is not an "insured" under the commercial auto policy.

## The Excess Policy

**{¶ 27}** The majority's holding that the UIM coverage provided by operation of law in the Liberty Mutual excess policy covers this off-duty employee is likewise untenable. R.C. 3937.18 mandates extension of UIM coverage only to "insureds." *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 481, 639 N.E.2d 438, 441. Because Scott-Pontzer is not an "insured" under this policy, any UIM coverage deemed provided by operation of law does not insure him for this accident, but would instead insure the named insured, Superior Dairy.

## Conclusion

**{¶ 28}** The effect of the majority opinion is to afford comprehensive automobile insurance coverage to any employee working for an employer prudent enough to insure itself. This cannot be what the majority means to do. I therefore respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 29}** Once again, a majority of this court has extended the reach of uninsured/underinsured motorist coverage as mandated by R.C. 3937.18 and further eroded the contractual nature of the relationship between an insurer and insured. In order to categorize this decedent as an insured under his employer's commercial liability insurance policy, the majority finds ambiguity in the policy where I believe there, clearly, is none.

**{¶ 30}** The majority reiterates the legal principle that an insurance policy is a contract and the relationship between an insurer and an insured is contractual. It is equally well settled that "[c]ontracts are to be interpreted so as to carry out the intent of parties, as that intent is evidenced by contractual language." *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. Insurance coverage is determined by reasonably construing the contract " 'in conformity with the *intention* of the parties as gathered from the ordinary and commonly understood meaning of the language employed.' " (Emphasis added.) *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383; *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus. Where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 276, 436 N.E.2d 1347, 1348.

**{¶ 31}** It appears from the overall policy that the company's general intent was to purchase a commercial automobile liability insurance policy to insure Superior Dairy as a legal entity against liability arising from the use of certain Superior Dairy vehicles. The fact that Superior Dairy is the only named insured

indicates the parties' intention to insure the company, not the private lives and activities of its employees. Likewise, Liberty Mutual did not contemplate providing insurance coverage in circumstances not related to Superior Dairy.

{¶ 32} The majority admits that its conclusion is one not intended by the parties to the insurance contracts at issue, and yet it proceeds to find ambiguity. There is nothing ambiguous in the Liberty Fire policy's definition of "insured" for purposes of underinsured motorist coverage. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co*. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. "You" unambiguously means the named insured, Superior Dairy. The policy definition of "insured" also states that if "you" is an individual, then a family member is also an insured. The ordinary and commonly understood meaning of individual is a single human being. This language is not susceptible of more than one interpretation. In this case, "you" is an entity, not an individual. Therefore, this subsection is inapplicable in this case. There is no ambiguity and no reason to resort to conjecture that "you" must include employees because a corporation acts by and through its employees, or that having a corporate insured is meaningless unless the coverage extends to some person or persons.

{¶ 33} *Assuming arguendo* that the decedent was a potential insured under the Liberty Fire policy for purposes of uninsured or underinsured motorist coverage, there can also be no coverage if the decedent was acting outside the scope of his employment. A *commercial* policy cannot be reasonably construed to provide uninsured or underinsured motorist coverage in the case of the personal, nonemployment-related activities of an employee. Neither party to the contract intended to provide free uninsured motorist coverage for employees' personal, nonemployment-related activities, regardless of individual risk factors such as

driving records, other applicable personal insurance coverage, or evidence of insurability. The insurance premium for such a policy would have to be adjusted to account for these additional risk factors. The company that provides, as a benefit of employment, automobile insurance for its employees' personal lives is rare.

{¶ 34} The majority reasons that the policy contains no language requiring that employees be acting within the scope of their employment in order to receive underinsured motorist coverage. However, it is inherent that a commercial policy, purchased by and written for a corporation, applies to the corporate entity and those acting within the scope of employment for that entity. There is no language in the policy that would create a presumption that it applies in situations other than events relating to Superior Dairy and its operation. Here, the decedent was engaged in a personal, nonemployment-related activity in a noncovered vehicle. Coverage under a commercial liability policy cannot be extended in these circumstances. Common sense alone dictates that this was an extension of coverage that the parties did not contemplate, bargain for, rate, or purchase. Is the extension of liability coverage next?

{¶ 35} Because contract law should control the interpretation of insurance policies, and because the intent of the parties remains the foundation of a contract, I cannot agree with the majority's conclusion. Superior Dairy and Liberty Mutual did not intend for the commercial policy at issue to provide uninsured/underinsured motorist coverage for the private activities of Superior's employees who were injured while outside the scope of their employment. Therefore, I respectfully dissent.

_____