OPINION
On June 14, 1999, Louise M. White was killed in an automobile accident when another vehicle traveled left of center and collided with Louise's vehicle head-on. The driver of the other vehicle, Jeffrey Mart, was insured with liability limits of $100,000 per person and $300,000 per accident. Plaintiff-Appellant William L. White, the decedent's husband and administrator of her estate, settled with Mart's insurer for its policy limits of $100,000 and signed a release on January 4, 2000. In addition, White settled with his own insurer under his uninsured/underinsured motorist coverage for liability limits of $250,000.[1] In his capacity as administrator of his wife's estate, he also signed a release with his personal insurer on December 17, 1999.
At the time of the accident, White was employed by AGCO Corporation. AGCO was insured by a commercial automobile policy with Defendant-Appellee American Manufacturers Mutual Insurance Company. Additionally, the decedent was employed by Crossroads Tubular Manufacturing, Inc. at the time of the accident. Crossroads owned a commercial automobile insurance policy through Atlantic Mutual Insurance Company. After White had settled with both the tortfeasor's and his personal insurer, he submitted a claim with each of these insurance companies for underinsured motorist benefits.
White and both insurance companies submitted motions for summary judgment in the trial court disputing coverage under the policies. The trial court granted American's and Atlantic's motions and denied White's. White has appealed this decision raising the following assignments of error:
 "I. The trial court abused its discretion and erred as a matter of law in granting Summary Judgment in favor of Defendant-Appellee American Manufacturers Mutual Insurance Company.
 "II. The trial court abused its discretion and erred as a matter of law in granting Summary Judgment in favor of Defendant-Appellee Atlantic Mutual Insurance Company.
 "III. The trial court abused its discretion and erred as a matter of law in declining to grant Summary Judgment in favor of Plaintiff-Appellant William L. White."
For ease of discussion, we will address all of the assignments of error together, rather than separately consider each summary judgment motion.
Initially, we note that an appellate court's review of a summary judgment decision is de novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1,10, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ.R. 56, the same as a trial court. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66.
The first argument that must be addressed is whether the Whites were insureds under either the American or the Atlantic policy. White argues that the reasoning in Scott-Pontzer v. Liberty Mut. Ins. Co. (1999),85 Ohio St.3d 660 applies in this case requiring a result that he and his wife are insureds under both policies. The Liberty Mutual policy encountered in Scott-Pontzer stated as follows:
"B. Who is An Insured?
"1. You.
"2. If you are an individual, any family member.
 "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
In interpreting this language, the supreme court concluded that "you" could be construed to include employees of the corporation: "[I]t would be reasonable to conclude that `you,' while referring to [the corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons including the corporation's employees." Scott-Pontzer,85 Ohio St.3d at 664.
Although the polices in the present case contain identical "Who is an Insured" sections as the policy in Scott-Pontzer, the trial court found this case distinguishable based on the "Drive Other Car" endorsements also contained in the American and Atlantic policies. The endorsement in the American policy specifically states under "Changes in Auto Medical Payments And Uninsured And Underinsured Motorists Coverages":
"The following is added to WHO IS AN INSURED:
 "Any individual named in the Schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except:
 "Any `auto' owned by that individual or by any `family member.'"
 The individuals named in the Schedule are "ANY EXECUTIVE OFFICER OR CLASS I, II OR III DIRECTOR OF THE NAMED INSURED."
The Atlantic policy endorsement states as follows:
 "The LIABILITY WHO IS AN INSURED provision is amended to include as an `insured' any individuals described above while using any `autos' described above.
 "If Medical Payments, Uninsured/Underinsured Motorists, PIP or other compulsory coverages required by the governing jurisdiction are covered on this policy, then your executive officers and family members residing in the same household are `insureds' while:
 "a. occupying, or b. A pedestrian when being struck by any `auto' you do not own except any `auto' owned by that executive officer or family member."
The individuals described in the Atlantic "Drive Other Car" endorsement include "executive officers or their spouses if the spouse is a member of the same household." The endorsements in both of these policies essentially have the effect of adding a fifth definition for "Who is an Insured," incorporating the individuals listed in the endorsement.
The appellees and the trial court reasoned that these endorsements eliminate the ambiguity found in Scott-Pontzer because "insured" includes actual individuals rather than just the corporate insured. Based on our research, the impact of a "Drive Other Car" endorsement which lists specific individuals in a corporate policy has only been addressed by two appellate courts. See, Westfield v. Galatis, Summit App. No. CA 20784, 2002-Ohio-1502 (finding the "Drive Other Car" endorsement eliminatesScott-Pontzer ambiguity); Still v. Indiana Ins. Co., Stark App. No. 2001 CA 00300, 2002-Ohio-1004 (finding the "Drive Other Car" endorsement does not eliminate Scott-Pontzer ambiguity). These courts are clearly divided as to the impact of this endorsement on the Scott-Pontzer analysis.
In Still v. Indiana, the corporate policy contained a "Drive Other Car" endorsement which listed two specific individuals as additional insureds. The policy also included a section defining "Who is an Insured" which contained identical language to the policy found in Scott-Pontzer
as stated above. The Fifth District reasoned that ambiguity still existed pursuant to Scott-Pontzer because "Who is an Insured" section still included "you," i.e. the corporation. For this reason, the Still court concluded that under Scott-Pontzer, "you" still must include the corporation's employees. Id. at 3.
 On the other hand, the Ninth District found that the existence of a "Drive Other Car" endorsement eliminated the ambiguity created pursuant to Scott-Pontzer in Westfield v. Galatis. The Westfield
court reasoned as follows:
"We do not reach a Scott-Pontzer analysis on the facts before us. Unlike Scott-Pontzer, where the insurance policy provided underinsured motorist insurance protection solely to a corporation without any regard to persons, Aetna's policy referred to the Schedule of individuals, in addition to the corporation, as the insureds under the policy. See id. at 664. Listing specific individuals as insureds removed the ambiguity present in Scott-Pontzer surrounding the term `you,' as it referred to insureds in a corporation's policy. Quagliata's policy language is not open to the interpretation that employees of the corporation are `insureds' for underinsured motorist coverage. Accordingly, we interpret the policy language at issue in Quagliata's policy as providing underinsured motorist insurance protection to the Schedule of specifically named individuals." Westfield at 2. We agree with the reasoning of the Ninth District.
The Still court found that because the corporation ("you") was still listed under "Who is an Insured," the corporation's employees must still be incorporated into the definition of "you." In essence, the Fifth District is suggesting that the corporation, the owner of the policy, cannot be listed as an insured unless it intends to additionally include all of its employees as insureds. Under this scenario, there is no way for a corporation to limit coverage to itself and only a few employees. We disagree with this reasoning. The Scott-Pontzer analysis was based on the foundation that the corporation was the only entity listed as an insured on the policy and therefore, some person or persons who could drive vehicles or sustain bodily injury needed to be included as insureds. If the policy lists actual individuals who can drive vehicles and sustain bodily injury, there is no longer an ambiguity. We do not believe that the Scott-Pontzer court intended to prohibit corporations from being listed as insureds in their own policies, which appears to be the result of the Still court's reasoning.
In addition to these appellate courts, a few common pleas courts have also addressed the impact of a "Drive Other Car" endorsement on theScott-Pontzer analysis. See Hall v. Kemper Ins. Co. (May 16, 2002), Pickaway C.P. No. 2001-CI-042; Sekula v. Hartford Ins. Co. (Apr. 23, 2002), Cuyahoga C.P. No. 422594; Ungur v. Buckeye Union Ins. Co. (Mar. 26, 2002), Cuyahoga C.P. No. 448778; Warren v. Hartford Ins. Co. (Mar. 8, 2002), Cuyahoga C.P. No. 430587. All of these cases echoed the reasoning of the Ninth District in Galatis finding that when the policy contains a "Drive Other Car" endorsement which lists additional individuals as insureds, there is no longer an ambiguity as discussed inScott-Pontzer. Only the Stark County Common Pleas Court, also in the Fifth District, followed the same reasoning as the Still court, finding that the endorsement did not eliminate the ambiguity. Lester v. FarmersIns. Group (Jan. 29, 2002), Stark C.P. No. 2001 CV 01338.
Moreover, we believe the maxim of construction expressio unius est exclusio alterius is relevant to our analysis. This maxim states that "if certain things are specified in a law, contract, or will, other things are impliedly excluded." State ex rel. Paluf v. Feneli (1994),69 Ohio St.3d 138, 143. In both insurance contracts, certain employees are specifically provided coverage. Because these specific employees are insured under the policy, pursuant to the maxim, all other employees are impliedly excluded from coverage under the policy.
Based on the foregoing discussion, we find that the "Drive Other Car" endorsements in the American and Atlantic policies eliminated any ambiguity as found in Scott-Pontzer. As a result, only those individuals listed in the endorsement would be covered under the uninsured/underinsured motorist section of the policy. Because there is no evidence that White or his wife would qualify under the endorsements, we find that they were not insureds under either policy. Accordingly, White's first assignment of error is overruled.
Having found that the Whites were not insureds under either policy, we find the remaining issues raised in the appeal are moot. Judgment affirmed.
WOLFF, P.J., and GRADY, J., concur.
[1] The $250,000 policy limit was set off by the $100,000 settlement with the tortfeasor. As a result, White actually received $150,000 from his personal insurance carrier.