{¶ 48} Although I am forced to agree that Oakar is an "insured" under the St. Paul policies by virtue of Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660, I respectfully disagree with the majority's conclusion that Oakar did not destroy St. Paul's right to notice under either the liability policy or the excess policy.
 {¶ 49} Throughout the proceedings, Oakar has insisted that she did not have to abide by the terms of the insurance policy because uninsured motorists coverage arose by operation of law and therefore none of the restrictions contained in the policy would apply to her. In fact, she explicitly made this point to St. Paul when confronted with the policy provisions relating to notice. See St. Paul's Cross-Motion for Summary Judgment, Exhibit 6.
 {¶ 50} Oakar has it wrong. It is important to understand thatScott-Pontzer found that UM/UIM coverage applied by operation of law in that case because the employer's general liability policy did not include UM/UIM coverage under an umbrella/excess insurance policy. This case is different, however, because the St. Paul liability policy did include UM/UIM coverage. Scott-Pontzer is only relevant for the limited purpose of determining whether Oakar was an insured — not whether UM/UIM coverage arises as a matter of law.
 {¶ 51} The Supreme Court has stressed repeatedly that an insurance policy is a contract. See Scott-Pontzer, 85 Ohio St.3d at 663. Oakar's coverage may have arisen as a matter of law, but that does not mean that she is excused from complying with all the terms of the policy. To find otherwise would be the functional equivalent of voiding the contract, for Oakar's interpretation of the law would permit her all the benefits of a contract without holding her to any of the mutual obligations contained in the contract. That would be an absurd result under the law.
 {¶ 52} One of the obligations contained in the St. Paul policy was a provision requiring Oakar to give St. Paul notice of an occurrence "as soon as possible" and to "promptly send us copies of any legal papers if a suit is brought." In addition, the policy placed on Oakar the obligation to inform St. Paul of any settlement, for the terms of the policy permitted St. Paul to refuse to "cover any claim that is settled without our consent." All of these terms were material under the contract since the parties agreed that "no one can sue us [St. Paul] to recover under this policy unless all of its terms have been lived up to."
 {¶ 53} The parties have stipulated that Oakar did not comply with these contract terms. Although the incidents giving rise to her claim arose in January 1990, she did not notify St. Paul of her claims against the tortfeasors until August 2000. See Joint Stipulations at paragraph 22. Likewise, Oakar did not inform St. Paul that she had settled her claims against tortfeasor Strong until August 2000. Id. at paragraph 26. I would find that these stipulations amount to a concession that Oakar was in breach of the St. Paul policy.
 {¶ 54} The majority maintains that the provision requiring "notice as soon as possible" is not the same thing as a "prompt-notice" provision. Perhaps St. Paul's goal of writing the policy in plain English as opposed to legalese has come back to haunt it — I suppose in the abstract one might be on notice of an obligation under the policy but not have the chance to give notice until some time later. But that is not the case here. As a matter of law, Scott-Pontzer applies retroactively as though the law pronounced in that case has always existed. See Peerless Elec.Co. v. Bowers (1955), 164 Ohio St. 209, 210; Heiney v. Hartford, Franklin App. No. 01AP-1100, 2002-Ohio-3718. This being the case, Oakar cannot rationally argue that she only became aware of the viability of her claim after Scott-Pontzer had been released. In Gruelich v. The Hartford, Cuyahoga App. No. 80987, 2002-Ohio-7229, we addressed this precise issue and held that a delay in waiting for a favorable decision does not constitute a reasonable excuse for failing to give notice of a claim. The law announced in Scott-Pontzer was in place in 1990, there for Oakar's taking. She chose not to file her claim then and waited ten years to do so. Under no stretch of the imagination could this be considered notice "as soon as possible."
 {¶ 55} Finally, the majority's conclusion that the policy "does not require notice as a condition precedent to coverage" is effectively contradicted by policy language saying, "no one can sue us to recover under this policy unless all of its terms have been lived up to." Notice was a term of the policy and Oakar did not live up to that term. In short, she materially breached the policy.
 {¶ 56} The remaining question would be whether Oakar could show that St. Paul did not suffer any prejudice. Ordinarily, this would be a question of fact under Ferrando. However, the facts of this case lead me to conclude that Oakar could not, as a matter of law, show that St. Paul did not suffer prejudice from her failure to give notice as soon as possible. The undisputed facts show that Oakar was involved in a three-car accident. Oddly, she settled with tortfeasor Strong and, for reasons that have never been clear, received her own settlement from Strong. It is, to say the least, highly unusual for cross-settlements between parties involved in an accident. At bottom, these facts suggest that there was liability to go around, and St. Paul no doubt would have had something to say about these settlements had it been given notice as soon as possible. In any event, Oakar has made no suggestion that her settlements did not prejudice St. Paul, so there would be no need to remand the matter back on that issue.
 {¶ 57} Accordingly, I would find that Oakar is in material breach of the policy by failing to give St. Paul notice of her claims that arose in 1990. Obviously, her inability to recover under the liability would vitiate recovery under the excess policy as well. I would therefore affirm the judgment in St. Paul's favor.