DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a summary judgment issued by the Wood County Court of Common Pleas on uninsured/underinsured motorist ("UM/UIM") claims pursuant to Scott-Pontzer v. Liberty-Mutual Fire Ins.Co (1999), 85 Ohio St.3d 660. Because we conclude that the trial court correctly interpreted the contract, we affirm.
 {¶ 2} In April 2000, appellants, Donald Kohntopp, Ann Kohntopp, Rachel Kohntopp, and Benjamin Kohntopp were injured in an automobile accident while they were on vacation in Florida. The driver of the vehicle which struck them died, but had a blood alcohol content almost double the legal limit. The Kohntopps settled with the other driver's insurance company, Allstate Insurance Company, for the policy limits of $50,000.
 {¶ 3} The Kohntopps then brought a declaratory judgment action to determine if UM/UIM coverage existed under policies issued by the following companies: Hamilton Mutual Insurance Company ("Hamilton"), the Kohntopp's insurer; State Farm Mutual Automobile Company ("State Farm"), the insurer of Donald's employer, Hild Product Sales Company; and ACE Property and Casualty Insurance Company ("ACE"), insurer of Ann's employer, Sunoco, Inc. The parties filed cross-motions for summary judgment. The trial court determined that the Kohntopps were entitled to coverage under their own policy with Hamilton but granted summary judgment as to State Farm and ACE, finding no coverage under those policies pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660.
 {¶ 4} The Kohntopps now appeal from the judgment granted in favor of ACE, setting forth the following two assignments of error:
 {¶ 5} "Assignment of Error No. 1
 {¶ 6} "The trial court erred as a matter of law when it held the appellants were not insureds for the purpose of uninsured/underinsured motorist coverage provided under the automobile liability policy issued by appellee, ACE property Casualty Insurance Company to appellant, Ann Kohntopp's employer, Sunoco, Inc.
 {¶ 7} "Assignment of Error No. 2
 {¶ 8} "The trial court erred as a matter of law when it held the appellants were not insureds for the purpose of uninsured/underinsured motorist coverage provided under the umbrella liability policy issued by appellee, ACE Property Casualty Insurance Company to appellant, Ann Kohntopp's employer, Sunoco, Inc."
 {¶ 9} We will address Kohntopp's two assignments of error together. The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
 {¶ 10} The Kohntopps claim that the trial court erred as a matter of law in determining that the fronting agreement in the ACE policy makes Sunoco self-insured. They contend that they have UM/UIM coverage under the ACE policy based upon the requirements of R.C. 3937.18 andScott-Pontzer, supra. In the alternative, they argue that the ACE policy language itself provides UM/UIM coverage. We disagree with both premises.
 {¶ 11} At the time of the Kohntopps' accident in April 2000, even though coverage could be limited in certain ways, R.C. 3937.18 still required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability insurance policy was issued. If UM/UIM coverage was not offered, it became part of the policy by operation of law. Davidson v. Motorists Mut. Ins. Co. (2001),91 Ohio St.3d 262, 264. The Supreme Court of Ohio has determined, however, that the "uninsured motorists provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Grange Mut. Cas. Co. v. Refiners Transport TerminalCorp. (1986), 21 Ohio St.3d 47, at the syllabus. In that case, Refiners, the insured corporation, had not filed a certificate of self-insurance pursuant to the statutory financial responsibility requirements for self-insurance.[1] Refiners sought to meet those requirements, however, in part by the purchase of a surety bond and two excess insurance policies for larger claims. Id. at 49. The Grange court stated that, although Refiners was not a "self insurer" in the legal sense as contemplated by R.C. 4509.45(D) and 4509.72, it was instead, self-insured in the practical sense, this was because "Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id. In other words, Grange views these policies practically, to determine who bears the risk.
 {¶ 12} We also note that, at the time of the Kohntopps' accident, R.C. 3937.18(K)(4) provided that the terms "uninsured and underinsured motor vehicles" did not include a "motor vehicle self-insured within the meaning of the financial responsibility law of the state in which the motor vehicle is registered." By its own terms, R.C. 3937.18 exempted policies issued for self-insured companies from requiring the offering of UM/UIM coverage. Consequently, Scott-Pontzer, which addressed ambiguities in an insurance policy where the insurer was required to offer UM/UIM coverage, does not apply when UM/UIM coverage is not initially required.
 {¶ 13} In this case, the ACE policy includes a total deductible amount which is equal to the policy limits. Under the terms of the policy language, any administrative expenses including costs of defense in handling claims are also included as costs which accrue against the policy limits. This type of policy constitutes a "fronting agreement" which is a method of administering insurance claims by "renting an insurance company's licensing
 {¶ 14} and filing capabilities in a particular state or states."Grubb v. Michigan Mut. Ins. Co., 2nd Dist. No. 19575, 2003-Ohio-1558, ¶ 19; Tucker v. Wilson, 12th Dist. No. CA2002-01-002,2002-Ohio-5142, ¶ 2, FN2. Appellate courts in Ohio disagree on whether fronting agreements mean the company that purchased the policy is self-insured, thus, not requiring UM/UIM coverage to be offered, an issue not yet addressed by the Supreme Court of Ohio.
 {¶ 15} The Second and Tenth District Ohio Courts of Appeals have held that where a company did not comply with the statutory financial responsibility requirements, the fronting agreement in its insurance policy did not make the company "self-insured." See Archer v. ACE USA, 10th Dist. No 02AP-882, 2003-Ohio-1790; Grubb v. Michigan Mut. Ins. Co., 2nd Dist. No 19575, 2003-Ohio-1558; Dalton v. Wilson, 10th Dist. No. 01AP-1014, 2002 Ohio 4015. Under the reasoning of those cases, the insurers were not considered self-insured and were, thus, required to offer UM/UIM coverage pursuant to R.C. 3937.18. As a result,Scott-Pontzer was applicable in determining UM/UIM insurance coverage by operation of law.
 {¶ 16} This court has held that, even where a company did not comply fully with R.C. 4509.45, a fronting agreement which required automatic reimbursement of claims by the company to the insurer established that the company was self-insured in the "practical sense." See McCollum v. Continental Ins. Co. (Apr. 9, 1993), Lucas App. No L-92-141, citing to Grange, supra, at 47. Since our decision in McCollum, the Fourth, Fifth, Seventh, and Eighth District Courts of Appeals have also concluded that, regardless of R.C. 4509.45, unless the policy shifts some risk to the insurance company, the employer is self-insured in the "practical sense." See Cincinnati Ins. Co. v. Torok,
7th Dist. No. 01-JE-24, 2003-Ohio-1764; Adams v. Fink, 4th Dist. No. 02CA2660, 2003-Ohio-1457; Dalton v. Travelers Ins. Co., 5th Dist. Nos. 2001CA00380, 2001CA00407, 2002-Ohio-7369; Pelc v. Hartford Fire Ins.Co., 5th Dist. 2002CA00142, 2002-Ohio-764; Rupple v. Moore, 5th Dist. No. 02-COA-003, 2002-Ohio-4873; Straubhaur v. Cigna Property Cas.Co., 8th Dist. No 81115, 2002-Ohio-4791; Musser v. Musser, 4th Dist. No. 02CA750, 2002-Ohio. In these cases, because the employer is characterized as self-insured, the Scott-Pontzer analysis does not apply since no UM/UIM coverage is required to be offered. We conclude that these cases represent the better view. Since the legislature has not determined that fronting agreements violate either the statutory scheme or the requirements for self-insured companies, we decline to make such a finding here.
 {¶ 17} In this case, the ACE policy provides liability coverage of $2,500,000 with a matching deductible of $2,500,000. The policy contains a bankruptcy clause which states that "[b]ankruptcy or insolvency of the `insured' or the `insured's' estate will not relieve us [the insurance company] of any obligations under this coverage." The Deductible Endorsement provides that the insurance company will be obligated only to pay damages and other expenses which would include costs of defense in excess of the Deductible amount.[2] The policy, however, through another separate endorsement, provides that any costs involved with supplementary payments, including the cost of defense of the insured or expenses incurred to seek recovery against a third party are subject to the $2,500,000 Limit of Insurance. Additionally, the insurance company, at its discretion, may pay damages and claims owed by the insured, but the insured must promptly reimburse the insurance company for any such expenditures.
 {¶ 18} In other words, the ACE policy contains a fronting agreement which shifts no risk to the insurer because the deductible is equal to the policy liability limits. The insurance company may process and even pay claims, but never has a legal or contractual duty to pay anything "out-of-pocket" since all expenses and claims are included in and subject to the $2,500,000 deductible. As a result, Sunoco is ultimately legally responsible for any claims made in connection with the operation of its motor vehicles. Although we can find nothing in the record which indicates whether Sunoco complied with the financial responsibility requirements of R.C. 4509.05, this fact is irrelevant to our analysis. In our view, under the language of this particular policy, since there is no risk shifting to ACE, Sunoco is in a "practical sense" self-insured, regardless of whether it has complied with the statutory requirements. Consequently, ACE was not required to offer UM/UIM coverage under Ohio law and Scott-Pontzer is not applicable.
 {¶ 19} The Kohntopps also argue that they are covered by UM/UIM insurance because the ACE policies contain such coverage. Our reading of the policies indicates that UM/UIM coverage would be included only for autos owned that "because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." Since we have determined that ACE was not
 {¶ 20} required to offer UM/UIM coverage, no coverage was provided under the terms of this policy. Therefore, the Kohntopps are not insureds under the ACE automobile or the umbrella liability policies.
 {¶ 21} Accordingly, the Kohntopps' two assignments of error are not well-taken.
 {¶ 22} Based upon the foregoing, we find that Ohio courts of appeal are in conflict on the issue of whether fronting agreements constitute self-insurance for the purposes of UM/UIM coverage under R.C.3937.18 and the application of Scott-Pontzer, supra. Therefore, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution, we hereby certify a conflict to the Supreme Court of Ohio on this issue for review and final determination. The parties are directed to S.Ct. Prac.R. IV for guidance on how to proceed.
 {¶ 23} As substantial justice has been done to the parties, the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.
 JUDGMENT AFFIRMED.
Knepper, J., concurs.
Singer, J., dissents.
[1] R.C. 4509.45 requires proof of financial responsibility by "filing any of the following:
"(A) A financial responsibility identification card as provided in section 4509.104. of the Revised Code;
"(B) A certificate of insurance as provided in section 4509.46
or 4509.47 of the Revised Code;
"(C) A bond as provided in section 4509.59 of the Revised Code;
"(D) A certificate of deposit of money or securities as provided in section 4509.62 of the Revised Code;
"(E) A certificate of self-insurance, as provided in section 4509.72 of the Revised Code, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to the self-insurer."
[2] "1. Our [ACE's] obligation to pay damages and ALAE [allocated loss adjustment expense] under this policy applies only to the sums the `insured' becomes legally obligated to pay as damages and ALAE in excess of the Deductible amount shown in the Schedule.
"The Deductible Per Accident shall apply separately as follows:
"a. to all `losses' under the Liability coverage provided by this policy; and
" b. to all `losses' under the Uninsured Motorists or Underinsured Motorists coverage provided by this policy; and
"c. to all `losses' under the Personal Injury Protection and Added Personal Injury Protection (or equivalent No Fault and added No Fault) coverage provided by this policy.
"2. You have entered into an agreement with the claim service organization shown in the schedule (the 'Claim Service Organization'), whereunder the Claim Service Organization shall provide investigation, administration, adjustment, and settlement services, and shall provide for the defense of all claims or "suits" arising under this policy. Accordingly, you agree with us that we shall not have any duty to defend any such `suit,' or to pay with respect to any claim or `suit' any ALAE.
"3. You will pay all sums the `insured' becomes legally obligated to pay within the Deductible Per Accident.
"4. We will have the right at our sole discretion:
"(a) to pay any damages under this policy within the Deductible Per Accident should you fail to pay any final judgment against or settlement entered into by an `insured'.
" (b) to pay any amounts within the Deductible Per Accident to settle any claim or `suit'.
" (c) to assume the defense and control of any claim or `suit' seeking payment of damages under this policy that we believe will exceed the Deductible Per Accident.
"(d) to pay any ALAE incurred by us associated with (a), (b), or (c) above.
You shall promptly reimburse us for any sums we may have paid under Item 4.
"5. All terms, conditions, and limitations of this policy not inconsistent with this endorsement shall continue to apply."