FLYNN ET AL., CROSS-APPELLEES, *v.* WESTFIELD INSURANCE
COMPANY, CROSS-APPELLANT, ET AL.

[Cite as *Flynn v. Westfield Ins. Co.,* 117
Ohio St.3d 1213, 2008-Ohio-991.]

(No. 2006–1619—Submitted October 10, 2007—Decided March 13, 2008.)

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

MOYER, C.J., and PFEIFER, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

LUNDBERG STRATTON, J., dissenting.

{¶ 2} I respectfully dissent. I would hold that while driving his own vehicle, Kevin Flynn did not qualify as an insured under the Westfield policy for purposes of uninsured-underinsured-motorist ("UM/UIM") coverage. Therefore, we should not dismiss this case as having been improvidently accepted, but we should reverse the judgment of the court of appeals and enter judgment in favor of Westfield Insurance Company.

{¶ 3} The named insured in the Westfield policy at issue was "Lawyers Title of Cincinnati, Inc. DBA Griffin and Fletcher." Kevin Flynn was an employee of Lawyers Title and a partner in the Griffin–Fletcher, L.L.P., law firm. Therefore, the court of appeals concluded that Flynn was an insured, and because he was acting within the scope of his employment when the accident occurred, that he must be entitled to UM/UIM coverage pursuant to *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. See *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. This cursory analysis did not consider the language of the entire policy and did not give effect to the intent of the parties to limit UM/UIM coverage.

{¶ 4} The plain language of the Westfield policy denies UM/UIM coverage to Kevin Flynn while he is operating his own vehicle or a vehicle leased to him. The

policy's declarations page is the "roadmap" of the coverage under the policy. Item two, "Schedule of Coverages and Covered Autos," identifies the various types of coverage selected, with a numerical symbol that designates the autos covered under each type of coverage and the premium paid. There is no dispute that Lawyers Title purchased *liability* coverage for *any* auto. This coverage protected the company from all liability claims arising from any vehicle driven by any employee while in the scope of employment, regardless of whether the employee was driving a personal or company-owned vehicle.

{¶ 5} Item two of the declarations page further shows that Lawyers Title purchased uninsured-motorist coverage, but *limited* that coverage to selected vehicles designated with the numbers "2" and "8." Section I—Covered Autos described the covered-auto designation symbols. The company purchased UM/UIM coverage for "owned" autos in category "2," described as "Only those 'autos' you own * * *. This includes those 'autos' you acquire ownership of after the policy begins." Those autos were specifically identified in the policy's "Schedule of Covered Autos You Own." The company initially insured nine company autos. In 2001, however, the company deleted certain vehicles previously listed so that those vehicles could be scheduled on the individual personal policies of their owners.

{¶ 6} The company also purchased UM/UIM coverage for "hired" autos in category "8" described as "Only those 'autos' you lease, hire, rent or borrow. *This does not include any 'auto' you lease, hire, rent, or borrow from any of your 'employees', partners (if you are a partnership), members (if you are a limited liability company) or members of their households.*" (Emphasis added.)

{¶ 7} Westfield offered coverage in category "9" for vehicles identified as "nonowned" autos. Lawyers Title, however, did *not* purchase UM/UIM coverage for this category, encompassing "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs." Therefore, by implication, Lawyers Title clearly rejected UM/UIM coverage for personally owned vehicles.

{¶ 8} At the time of the February 22, 2002 accident, Kevin Flynn was operating his personal vehicle while on company business. His vehicle was not owned by Lawyers Title and was not listed as a covered auto on the policy's declarations page. The company did not own, lease, hire, rent, or borrow Flynn's vehicle. There was no UM/UIM coverage for vehicles "owned by" an employee or partner "while used in" the business. Therefore, Flynn did not qualify as an insured under the language of the policy, and he was not covered for purposes of that policy's UM/UIM coverage.

{¶ 9} In addition, the intent of the parties to limit UM/UIM coverage substantiates the plain language of the policy. Lawyers Title office manager, Diane Bedinghaus, who was responsible for company insurance matters, testified that all employees and partners knew that they were responsible for acquiring insurance for their personal vehicles. Michael Fletcher, a senior partner of Griffin–Fletcher, L.L.P., who was an owner of the title company, testified that employees and partners not provided with company vehicles knew that the company did not insure personal vehicles and that they were expected to purchase their own insurance. Furthermore, Lawyers Title did not pay a premium for coverage of personal vehicles. Consequently, I believe that the policy language, coupled with the intention of the parties, requires this court to conclude that Flynn was not entitled to UM/UIM coverage under the Westfield policy.

{¶ 10} Finally, the fact that the named insured was a corporation does not mandate *Scott–Pontzer* coverage merely because Flynn was acting within the course and scope of employment when the accident occurred. If the policy contains *specific language to the contrary*, then an insurance policy that names a corporation as an insured for UM/UIM coverage does not cover an employee's accident, even when the employee is acting within the course and scope of employment. See *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph two of the syllabus.

{¶ 11} Here, there is specific language to the contrary. The policy provides UM/UIM coverage for only specific covered vehicles: category 2: owned autos and category 8: hired autos. These autos were identified on the declarations page. Because Kevin Flynn was not driving a covered vehicle when the accident occurred, the Westfield policy does not provide him with UM/UIM coverage.

{¶ 12} Although we have seen *Scott–Pontzer* cases with less frequency since we limited its application in *Galatis*, we should not ignore these remaining cases simply because there are fewer to decide. Pursuant to *Galatis*, the specific language of the contract controls. We must continue to interpret a contract by its language, giving effect to the intent of the parties. The court below failed to do so. Consequently, I respectfully dissent and would reverse the judgment of the court of appeals and enter judgment in favor of Westfield Insurance Company.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Rendigs, Fry, Kiely & Dennis, L.L.P., John F. McLaughlin, and Peter L. Ney; and Haverkamp, Brinker, Rebold & Riehl Co. and Douglas M. Morehart, for cross-appellees.

Isaac, Brant, Ledman & Teetor, L.L.P., and J. Stephen Teetor, James H. Ledman, and Jessica K. Philemond, for cross-appellant.