DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal and cross-appeal from a judgment of the Ottawa County Court of Common Pleas which granted summary judgment to defendant-appellee/cross-appellant, The Cincinnati Insurance Company ("CIC"), in an action seeking uninsured motorist coverage benefits. Through that judgment, the court dismissed the complaint of plaintiffs-appellants/cross-appellees, Melanie S. Miller, Calin Miller and Daniel A. Miller, and the cross-claim of defendant American Family Insurance Company against CIC.
 {¶ 2} On June 22, 1999, Melanie Miller was involved in an automobile accident while driving a vehicle owned by her husband Daniel Miller. Melanie was using the vehicle for personal errands and her minor daughter Calin Miller was in the vehicle as a passenger. The accident was caused by Jose Guterrez, who failed to yield the right of way at a stop sign. Mr. Guterrez was an uninsured driver.
 {¶ 3} At the time of the accident, the Millers maintained a policy of automobile insurance issued by American Family which included uninsured motorist coverage. In addition, Daniel Miller was employed by Obars Machine and Tool Company ("Obars"). Obars was a named insured under a policy of insurance issued by CIC, with a policy period of July 10, 1998 to July 10, 2001. That policy included business auto and uninsured/underinsured motorist ("UM/UIM") coverages (the "auto policy"). Obars was also a named insured under a commercial umbrella policy issued by CIC with a policy period of July 10, 1997 to July 10, 2000 (the "umbrella policy").
 {¶ 4} On August 18, 2000, the Millers filed a complaint against Guterrez, American Family, and John Doe and/or John Doe, Inc., identified as "Plaintiffs' insurer and successor companies or entities thereto. Identities and addresses unknown." Subsequently, on June 25, 2001, the Millers filed their first amended complaint, adding CIC as a party defendant. In their claim against CIC, the Millers sought UM/UIM benefits under the policy of insurance issued to Obars. The Millers filed a second amended complaint on November 16, 2001, adding Monroe Guaranty Insurance Company ("Monroe") as a party defendant. Monroe had issued a policy of insurance to Melanie Miller's employer, Grates Silvertop Restaurant, and the Millers sought UM/UIM benefits under that policy.[1]
 {¶ 5} In their answer to the Millers' second amended complaint, CIC raised the affirmative defense that the Millers were not entitled to UM/UIM benefits under the CIC auto policy because they violated the contractual limitations period and gave late notice of the June 22, 1999 accident and of their claim for benefits. In addition to filing an answer to the second amended complaint, American Family filed a cross-claim against CIC and Monroe. The cross-claim sought an order declaring that in the event the Millers were entitled to UM/UIM coverage from American Family, that coverage is excess and/or pro rata to the coverage provided by the CIC and Monroe policies.
 {¶ 6} On February 6, 2002, CIC filed its motion for summary judgment. CIC raised four issues in that motion: (1) that the Millers were not insured under the UM/UIM provisions of the CIC auto policy; (2) that the Millers' UM/UIM claims were barred by the other vehicle exclusion; (3) that the Millers violated the contractual two year time limitation within which they were required to file their lawsuit against CIC; and (4) that the Millers were not insured under the commercial umbrella policy. In their memorandum in opposition to CIC's summary judgment motion, the Millers sought an order finding that they were "insureds" under both the auto and umbrella policies of insurance issued by CIC to Obars and were therefore entitled to UM/UIM coverage under both policies.
 {¶ 7} American Family filed its own summary judgment motion and a memorandum in opposition to CIC's summary judgment motion. Consistent with its cross-claim, American Family requested that the court hold as a matter of law that the CIC and Monroe policies be found to provide primary insurance for the Millers' UM/UIM claims. Alternatively, American Family requested that the court order the insurance companies to provide UM/UIM coverage to the Millers on a pro rata basis.
 {¶ 8} In a decision and order dated March 19, 2002, the trial court granted CIC's motion for summary judgment on both plaintiffs' complaint and American Family's cross-claim. The trial court examined the CIC policy and determined that the Millers were insureds under the policy. However, the court concluded that because, at the time of the accident, Melanie Miller was driving an automobile that was not specifically identified in the policy, the "other owned vehicle" exclusion of the policy operated to prevent coverage. Although the court did not expressly address CIC's argument that the Millers' claims were barred by the limitations period set forth in the policy, by reaching the issue of the application of the "other owned vehicle" exclusion, the court necessarily determined that the Millers had timely filed suit against CIC. Subsequently, the trial court filed a judgment entry granting CIC's motion for summary judgment, dismissing the Millers' second amended complaint against CIC and dismissing American Family's cross-claim against CIC. The court also found, pursuant to Civ.R. 54(B), that there was no just reason for delay. Accordingly, despite the fact that other claims are still pending in the trial court, the Millers filed the present appeal to challenge the trial court's ruling.
 {¶ 9} In their brief before us, the Millers raise the following assignment of error:
 {¶ 10} "The trial court erred by granting appellee Cincinnati Insurance Company's motion for summary judgment and finding that appellant, while an insured, was excluded from coverage under Cincinnati's insurance policy."
 {¶ 11} In addition, CIC filed a cross-appeal, which raises an additional assignment of error:
 {¶ 12} "The trial court erred by not granting summary judgment in favor of defendant/appellee/cross-appellant The Cincinnati Insurance Company based on plaintiffs/appellants not being an insured under the insurance policies issued by the Cincinnati Insurance Company."
 {¶ 13} Because the assignments of error are interrelated and both challenge the trial court's summary judgment ruling, they will be addressed together. In reviewing a trial court's ruling on a motion for summary judgment, this court examines the case de novo. Conley-Slowinskiv. Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360,363. To prevail on a motion for summary judgment, the movant must demonstrate that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 14} The arguments raised by the parties require that we address the following issues: (1) Do the Millers qualify as insureds under the CIC auto policy? (2) If the Millers are insured under the policy, is the contractual limitations period in the auto policy valid? and (3) If the contractual limitations period is invalid, does the "other owned vehicle" exclusion prevent the Millers from coverage under the auto policy?
 {¶ 15} The "Ohio Uninsured Motorists Coverage — Bodily Injury" provision of the CIC auto policy at issue provides that CIC "will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or operator of * * * an `uninsured motor vehicle.'" It then identifies "who is an insured" as follows:
 {¶ 16} "1. You.
 {¶ 17} "2. If you are an individual, any `family member.'
 {¶ 18} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 19} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 20} Furthermore, the "Named Insured" under the policy is identified, through a General Change Endorsement effective March 25, 1999, as Obars Machine and Tool Company and Marcia K. Obarski, Trustee of the Marcia K. Obarski Trust. Similarly, a General Change Endorsement effective July 10, 1998, added Greg and Marci Obarski as additional insureds under the policy.
 {¶ 21} The trial court concluded that because the policy referred to a corporation as "you," the policy was ambiguous and therefore necessarily included coverage for the corporation's employees. In reaching this conclusion, the court expressly found that the naming of specific individuals in the policy did not cure the ambiguity created when the term "you" refers to a corporation as a named insured. CIC now asserts that because, on the date of the accident, the named insureds under the auto policy were identified as Obars and Marcia K. Obarski, Trustee of the Marcia K. Obarski Trust, and because the policy listed Greg Obarski and Marci Obarski as additional insureds, the term "you" in the policy was not ambiguous and did not include the Millers.
 {¶ 22} We first note that it is well-established that in order to determine whether the terms in a contract are ambiguous, a court must generally give words and phrases their plain, ordinary or common meaning. Gomolka v. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166,167-168. If a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact. Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. "`Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'" Scott-Pontzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 664 quoting King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
 {¶ 23} CIC's argument requires us to once again examine the decision of the Supreme Court of Ohio in Scott-Pontzer. InScott-Pontzer, the decedent, Christopher Pontzer, was killed in an automobile collision which was the result of the negligence of an underinsured motorist. At the time of the collision, Pontzer was driving his wife's automobile and was not acting within the scope of his employment with Superior Dairy. Superior Dairy was the named insured under a policy of commercial automobile liability insurance, which included UIM coverage, and was the named insured under an insurance policy of umbrella/excess coverage, which did not include UIM coverage.
 {¶ 24} On review, the Supreme Court of Ohio held in pertinent part that, absent limiting provisions, employer commercial UM/UIM coverage extends to all of a named insured corporation's employees. The court reached this conclusion by recognizing that under the commercial auto policy at issue, the identity of the "insureds" was ambiguous because the term "you" referred solely to Superior Dairy. Because a corporation can act only through live persons, the court reasoned that it would be "nonsensical" to limit coverage to the corporate entity. Id. at 664. The same applies for corporate umbrella/excess policies which contain any element of automobile liability coverage, even if such policies do not mention UM/UIM coverage. Subsequently, in Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557, the Supreme Court of Ohio applied Scott-Pontzer to family members of employees.
 {¶ 25} CIC now asserts that the ambiguity recognized inScott-Pontzer is not at issue in this case because the auto policy refers to individuals as well as the corporate insured. Because the Millers were not named as insureds under the policy, CIC maintains that they do not qualify for UM/UIM coverage under the policy. We disagree.
 {¶ 26} In Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022, we addressed this very issue with regard to a similar CIC policy and concluded that the addition of two individual insureds on the declarations page did not remove the ambiguity created when a corporation is identified as a named insured and use of the word "you" refers to a corporation. In reaching this conclusion, we relied on the Fifth District Court of Appeals decision in Burkhart v. CNA Ins. Co. (Feb. 25, 2002), Stark App. No. 2001CA00265. In Burkhart, the court determined that the plaintiff, an employee of Western Branch Diesel, Inc. who was operating his own automobile when it was negligently struck by another motorist, was an insured despite the fact that the declarations page listed named individuals as well as corporate entities. Applying Scott-Pontzer, the court reasoned: "Although specific individuals are named insureds under the Continental policies, such fact does not cure the ambiguity created when `you' refers to Western Branch Diesel, Inc., as the named insured. The rational [sic] announced by the Ohio Supreme Court in Scott-Pontzer
is applicable to the instant matter. If the policies only afforded coverage to the specific individuals named, the inclusion of Western Branch as a named insured would be superfluous."
 {¶ 27} CIC urges us to overrule or modify our holding in Kasson.
We decline to do so and find that the Millers do qualify as insureds under the auto policy. We do note, however, that the Supreme Court of Ohio has accepted for review an appeal in the Burkhart case. See Burkhartv. CNA Ins. Co. (2002), 96 Ohio St.3d 1438. Accordingly, CIC's assignment of error is not well-taken.
 {¶ 28} Finding that the Millers are insureds under the auto policy, we next must consider whether the contractual limitations period under that policy was valid. Although the trial court did not expressly address this issue, in order to reach the issue of the applicability of the "other owned vehicle" exclusion to the Millers' case, the court by necessity had to conclude that the limitations period in the policy was invalid or that the appellants' complaint was properly amended.
 {¶ 29} Paragraph (E)(4) of the Uninsured Motorist Coverage — Bodily Injury provision of the auto policy at issue reads in relevant part: "No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this policy unless the `insured' has satisfied all of the things that `insured' is required to do under the terms and conditions of this policy and unless the lawsuit or arbitration is commenced within two years from the date of the `accident.'"
 {¶ 30} CIC argues now, as it argued in the court below, that if the Millers are determined to be insureds, their claims for UM coverage are barred because they failed to file suit against CIC within two years of the date of the accident.
 {¶ 31} The legal basis for recovery under the uninsured motorist provisions of an insurance policy is contract, not tort. Kraly v.Vannewkirk (1994), 69 Ohio St.3d 627, 632, citing Motorists Mut. Ins.Co. v. Tomanski (1971), 27 Ohio St.2d 222-223. The general statute of limitations for actions sounding in contract is fifteen years. R.C.2305.06. The Supreme Court of Ohio, however, has held that "an insurance policy may limit the time for an action on the contract to less than fifteen years if a reasonable time for suit is provided." Lane v. GrangeMut. Cos. (1989), 45 Ohio St.3d 63, 64. Such a limitation must be clear and unambiguous to the policyholder. Id. Where a limitation set forth in an insurance policy is unclear and ambiguous, it will fail to shorten the statute of limitations provided by law. Id. at 65.
 {¶ 32} In Kraly, supra, and Miller v. Progressive Cas. Ins. Co.
(1994), 69 Ohio St.3d 619, the Supreme Court of Ohio addressed issues related to contractual limitations periods set forth in UM/UIM provisions of insurance contracts. The policy in Miller required the insured to commence arbitration or a lawsuit against the insurer to recover uninsured or underinsured motorist benefits within twelve months of the date of the accident. The court concluded that such a limitation was unreasonable and void as against public policy. In reaching that decision, however, the court noted: "We do not suggest that time-limitation provisions of the type at issue in this case are altogether prohibited. Consistent with our analysis, a two-year period, such as that provided for bodily injury actions in R.C. 2305.10, would be a reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action or proceeding for payment of benefits under the uninsured or underinsured motorist provisions of an insurance policy." Id. at 624-625. In Kraly, decided on the same day as Miller, the UM/UIM coverage provisions of the policy at issue required that the insureds file any action against the insurer for UM/UIM benefits within two years from the date of the accident. Under the unique facts of that case, however, the tortfeasor did not become uninsured until three and one-half months before the expiration of the two year contractual limitations period, when the tortfeasor's liability carrier became insolvent. Given these facts, the court held "* * * that the validity of a contractual period of limitations governing a civil action brought pursuant to the contract is contingent upon the commencement of the limitations period on the date that the right of action arising from the contractual obligation accrues. Where the liability insurer of a tortfeasor has been declared insolvent, a right of action of an insured injured by the tortfeasor against his insurer under the uninsured motorist provision of his automobile insurance contract accrues on the date that the insured receives notice of the insolvency. Accordingly, a provision in a contract of insurance which purports to extinguish a claim for uninsured motorist coverage by establishing a limitations period which expires before or shortly after the accrual of the right of action for such coverage is per se unreasonable and violative of the public policy of the state of Ohio as embodied in R.C. 3937.18." Id. at 635.
 {¶ 33} Interpreting Miller and Kraly, other appellate districts in this state have upheld two year contractual limitations periods for bringing claims for uninsured motorist benefits. In Marsh v. State Auto.Mut. Ins. Co. (1997), 123 Ohio App.3d 356, the plaintiff was involved in an automobile accident with an uninsured driver. The plaintiff filed suit against the tortfeasor approximately two years after the accident but did not learn that the tortfeasor was uninsured until several months after filing suit. After learning that the tortfeasor was uninsured, the plaintiff informed her insurance carrier that she intended to file a claim for uninsured motorist benefits. The uninsured motorist provisions of plaintiff's insurance policy, however, provided that "with respect to such coverage, no legal action or arbitration proceeding may be brought against us unless the action or proceeding is begun within two years of the date of the accident." The trial court granted the plaintiff's motion for summary judgment and held that the policy's two-year limitation did not begin to run until the insured "discovered" that the tortfeasor was uninsured. The court of appeals reversed, refusing to apply a discovery rule to the typical traffic accident situation. The court explained: "In the usual situation the insured has ample time to discover the insured status of the tortfeasor within the two-year contractual period. Indeed the insured will usually learn on the date of the accident or shortly thereafter whether the tortfeasor was insured under an automobile liability policy. It is unlawful to operate a motor vehicle in this state unless proof of financial responsibility is maintained. See R.C. 4509.101. Proof of financial responsibility is ordinarily provided by use of financial responsibility identification cards, which every insurer writing motor vehicle insurance in Ohio is required to provide to every policyholder. See R.C. 4509.103. Discovering the insurance status of a tortfeasor is quite unlike discovering medical or legal malpractice. In the latter situation the Ohio Supreme Court has been willing to toll the short statute of limitations period for bringing such actions while the malpractice remains undiscovered. Frysinger v. Leech (1987),32 Ohio St.3d 38." Id. at 361. See, also, Mitchell v. State Auto. Mut.Ins. Co. (Dec. 13, 2001), Franklin App. No. 00AP-1431.
 {¶ 34} In light of these cases, it is clear that a two-year contractual limitations period that begins to run when a cause of action for uninsured motorist benefits accrues is reasonable. In the present case, the tortfeasor was uninsured on the date of the accident. Although the tortfeasor indicated to the trooper on the scene of the accident that he was insured, the validity of that insurance could have been readily determined. Accordingly, under the circumstances of this case, the day of the accident, June 22, 1999, is the day on which the contractual limitations period began to run. Appellants did not file their amended complaint adding CIC as a party defendant until June 25, 2001, and therefore did not timely assert their claim for uninsured motorist benefits.
 {¶ 35} Our inquiry, however, is not at an end, for we must determine if appellants' amended complaint related back to the original complaint, thereby making it timely.
 {¶ 36} The timeliness of the claims against CIC are governed by Civ.Rs. 3(A) and 15(C) and (D), which are to be read in conjunction with one another when attempting to determine "if a previously unknown, now known, defendant has been properly served so as to avoid the time bar of an applicable statute of limitations * * *." Amerine v. Haughton ElevatorCo. (1989), 42 Ohio St.3d 57, syllabus. Civ.R. 3(A) provides that "A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * * or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D)." Civ.R. 15(D) sets forth the requirements for properly amending a complaint to add the name of a defendant, previously sued under a fictitious name such as "John Doe," when that defendant's true identity becomes known to a plaintiff. Amerine, supra at 59. Among the requirements are: the plaintiff must amend the complaint upon discovery of the defendant's true name; the summons must contain the words "name unknown;" and the defendant must be personally served. Civ.R. 15(D). An amended pleading will then relate back to the date of the original pleading when "the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * *." Civ.R. 15(C). See Patrolman "X" v. Toledo (1999), 132 Ohio App.3d 374,404-405. The Supreme Court of Ohio has strictly construed this amendment procedure. Amerine, supra.
 {¶ 37} In the present case, the original complaint listed "John Doe and/or John Doe, Inc., Plaintiffs' insurer and successor companies or entities thereto. Identities and addresses unknown" as a party defendants. In the amended complaint of June 25, 2001, the plaintiffs then named CIC as a party defendant. That amended complaint, however, was served on CIC by certified mail. In Amerine, supra, the Supreme Court of Ohio expressly found that certified mail service does not comply with the requirements of Civ.R. 15(D). Similarly, the summons issued to CIC on the amended complaint does not contain the words "name unknown." Again, the Supreme Court of Ohio has strictly construed the requirements of Civ.R. 15(D) in requiring these specific words. Amerine, supra.
 {¶ 38} Accordingly, we must conclude that the amended complaint filed against CIC on June 25, 2001, did not relate back to the original complaint and, as such, was not timely filed.
 {¶ 39} Finding that the contractual limitations period in the UM provisions of the CIC business auto policy was valid, that appellants' first amended complaint was not timely filed and that the complaint was not timely amended, we need not consider whether the "other owned vehicle" exclusion in the subject policy applied in this case. The trial court, therefore, did not err in granting CIC summary judgment against appellants, albeit for a different reason, and appellants' assignment of error is not well-taken.
 {¶ 40} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. The parties are ordered to pay their own court costs of these appeals.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.
[1] The claim against Monroe is not at issue in this appeal.