ARCHER, Appellant,

v.

ACE, USA et al., Appellees.

[Cite as *Archer v. ACE, USA*, 152 Ohio App.3d 455, 2003-Ohio-1790.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–882.

Decided April 8, 2003.

Smith, Phillips & Associates, Scott Elliot Smith and Janet L. Phillips, for appellant.

Reminger & Reminger Co., L.P.A., Patrick Kasson and Warren M. Enders, for appellee ACE, USA.

Rodgers & Co., L.P.A., and Walter A. Rodgers, for appellee AAIC.

TYACK, Judge.

{¶ 1} On September 3, 1999, Christina Archer was involved in a motor vehicle collision in which she sustained serious injuries. Archer ultimately received a $100,000 policy-limits settlement from the tortfeasor's insurer, Westfield Insurance Company, in June 2001. Although Archer was then employed by Speedway Super America ("Speedway"), it is undisputed that at the time of the accident, she was operating her own vehicle and was not acting in the course and scope of her employment. This case arises from Archer's attempts to obtain uninsured/underinsured motorist ("UM/UIM") benefits through Speedway's various insurance policies.

{¶ 2} In October 2000, a complaint was filed on behalf of Christina Archer in the Franklin County Court of Common Pleas seeking, inter alia, declaratory relief; specifically, she sought a determination as to the availability of UIM coverage from any or all insurance companies named as defendants. The defendants were named in the following capacities. Speedway is a retail gasoline outlet owned by Marathon Ashland Petroleum, L.L.C. ("MAP"). MAP, in turn, is owned in part by Marathon Oil, a subsidiary of USX. Pacific Employers Insurance Company ("Pacific")[1] issued a business auto policy to USX. American International Group, Inc. ("AIG") issued a general liability insurance policy to USX. Finally, American Alternative Insurance Company ("AAIC") issued a commercial comprehensive catastrophic liability policy to Ashland, Inc.

{¶ 3} The parties eventually filed cross-motions and memoranda seeking summary judgment. A motion to dismiss was also filed on behalf of AAIC. The trial court ultimately sustained the summary judgment motions filed on behalf of AIG and Pacific. The court granted AAIC's motion to dismiss it from the lawsuit and, as a result, held that its summary judgment motion was moot.

{¶ 4} Christina Archer ("appellant") has timely appealed, assigning two errors for our consideration:

{¶ 5} "I. The trial court erred in determining appellees AIG and Pacific are not subject to R.C. 3937.18 because they are self-insurers in the practical sense.

{¶ 6} "II. The trial court erred in determining there was no justiciable controversy as to claims against appellee AAIC."

{¶ 7} Preliminarily, we set forth the well-established standards by which we are bound in reviewing Civ.R. 56 summary judgments. In considering a motion for summary judgment, the evidence must be construed in favor of the nonmov-

---

1. Although Pacific is now known as "ACE, USA," for ease of discussion and consistency, we adhere to the name "Pacific," as did the litigants and the trial court.

ing party. Summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 677 N.E.2d 343. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence as to any issue for which that party bears the burden of production at trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Finally, it is well established that an appellate court reviews summary judgments de novo; we review such judgments independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327.

{¶ 8} By her first assignment of error, appellant argues that the trial court erred in concluding that AIG and Pacific are not subject to R.C. 3937.18, Ohio's financial responsibility statute outlining circumstances under which UM/UIM benefits must be offered by insurance companies. As discussed below, "self-insurers" are now generally excepted from the R.C. 3937.18 UM/UIM coverage requirement. Appellant first takes issue with the trial court's finding that AIG and Pacific are "self-insurers in the practical sense" and, thus, exempt from R.C. 3937.18.

{¶ 9} As an initial matter, we note that the version of R.C. 3937.18 applicable to the instant case is that version effective September 3, 1997.[2] Former R.C. 3937.18 provided that "[n]o automobile liability or motor vehicle liability policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both [UM/UIM] coverages are offered to persons insured under the policy * * *." R.C. 3937.18(A)(1). Further, R.C. 3937.18(A)(1) and (2) provided, in part, that the UM/UIM coverages must be "in an amount of coverage equivalent to the

---

2. R.C. 3937.18 has since been amended, effective October 31, 2001, with the express purposes to, inter alia, "[e]liminate any requirement of the mandatory offer of * * * [UM/UIM] coverages[;] * * * [e]liminate the possibility of * * * [UM/UIM] coverages being implied as a matter of law in any insurance policy[;] * * * [e]liminate any requirement of a written offer, selection, or rejection form for * * * [UM/UIM] coverages from any transaction for an insurance policy[; and] * * * [t]o supersede the holdings of the Ohio Supreme Court in *Linko v. Indemnity Ins. Co. of N. America* (2000), 90 Ohio St.3d 445 [739 N.E.2d 338], *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, * * * and their progeny." S.B. No. 97, Section 3.

automobile liability or motor vehicle liability coverage * * *." Failure to offer UM/UIM coverage generally resulted in the automatic extension of that coverage by operation of law. See *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph two of the syllabus.

{¶ 10} Also critical to this case is R.C. 4509.45, which governs the means by which entities may provide proof of financial responsibility as required in Ohio. In pertinent part, R.C. 4509.45 provides:

{¶ 11} "Proof of financial responsibility * * * may be given by filing any of the following:

{¶ 12} "(A) A financial responsibility identification card * * *;

{¶ 13} "(B) *A certificate of insurance* * * *;

{¶ 14} "(C) A *[financial surety] bond* * * *;

{¶ 15} "(D) A certificate of deposit of money or securities * * *;

{¶ 16} "(E) *A certificate of self-insurance* * * * supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to the self-insurer." (Emphasis added.)

{¶ 17} Appellant initially predicated her claim of entitlement to UIM coverage upon the Supreme Court of Ohio's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. Appellant submitted that *Scott–Pontzer* and its progeny establish, as a threshold matter, that she is an "insured" under the policies at issue here and is entitled to UIM coverage as a matter of law.

{¶ 18} In *Scott–Pontzer*, the Supreme Court of Ohio followed a fundamental principle in the application of contract law—interpreting ambiguous terms and language strictly against the drafter of the contract and liberally in favor of the "insured." In particular, the court examined the definitional provision of an insurance contract issued to a corporation, which defined "insured" as "1. You; 2. If you are an individual, any family member." The court found that this definition of an insured as "you" created ambiguity; since a corporation can act only through real persons, one reasonable interpretation of "you" included the corporation's employees. Accordingly, the corporate employee was held to be an insured as a result of the ambiguous definition and, ultimately, UM/UIM coverage arose by operation of law.

{¶ 19} In the instant case, Pacific and AIG countered appellant's *Scott–Pontzer* claim with the contention that because they are "self-insurers" and thus not subject to R.C. 3937.18, UM/UIM coverage does not arise by operation of law.

The trial court agreed and, as a result, did not reach the *Scott–Pontzer* analysis or any further related inquiry.

{¶ 20} The corporate structure and insurance design with respect to Pacific and AIG are particularly significant to the primary issue before us. The trial court, owing to the interpretations of the defendants, set forth the following summary:

{¶ 21} "Defendants Pacific and AIG explain * * * that they are 'self-insured.' The Pacific policy * * * has a * * * five million per occurrence liability limit. * * * The policy also has a per occurrence [matching] deductible of $5 million dollars. * * * Further, the Director of Insurance for Marathon Oil Corp. * * * stated that USX, Marathon Oil, MAP and Speedway did not transfer any risk to Pacific through the policy. * * * Nor has Pacific paid any claims; Speedway has.

{¶ 22} "AIG issued a policy with ten million per occurrence liability limits. * * * However, no risk transferred under the policy. * * * AIG has retained the risk and Marathon Oil and its subsidiaries pay them; they do not submit claims to AIG. * * * In addition, Marathon Oil's wholly owned subsidiary, Old Main, has reinsured the AIG policy and has assumed the risk through a Facultative Reinsurance Agreement. * * * Further, a bank-issued letter of credit has been provided to AIG * * * which guarantees Old Main's performance up to the sum of $13,000,000. * * *" (Summary Judgment Decision at 3–4.)

{¶ 23} In its decision, the trial court relied exclusively upon language contained in *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, in which the Supreme Court of Ohio addressed, arguably indirectly via its text, the applicability of R.C. 3937.18 to self-insurers. In *Grange,* the court determined that an employer satisfied state financial responsibility requirements by purchasing both a financial surety bond and excess insurance coverage, none of which contained UM/UIM coverage.

{¶ 24} The *Grange* court narrowly framed the issue before it as being:

{¶ 25} "* * * whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements concerning uninsured motorist coverage contained in R.C. 3937.18 relative to employees injured in the course of employment while driving or occupying a vehicle owned by the employer." Id. at 48, 21 OBR 331, 487 N.E.2d 310.

{¶ 26} Significantly, the *Grange* court emphasized that the defendant-employer involved in the case before it:

{¶ 27} "* * * sought to meet its financial responsibility requirements and to protect itself from claims, in part by purchasing a financial responsibility surety

bond * * *. As such, it was not a 'self-insurer' in the legal sense contemplated by R.C. 4509.45 * * * and 4509.72, *but rather in the practical sense* in that [defendant] was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." (Emphasis added.) Id. at 49, 21 OBR 331, 487 N.E.2d 310.

{¶ 28} The *Grange* court, quoting *Snyder v. Roadway Express, Inc.* (1982), 7 Ohio App.3d 218, 7 OBR 279, 455 N.E.2d 11, also added the following relative to self-insurers:

{¶ 29} "* * * The [*Snyder*] court recognized * * * that if the statute did apply to self-insurers, in addition to insurance carriers authorized to write motor vehicle liability insurance policies, it would result in the absurd 'situation where one has the right to reject an offer of insurance to one's self * * *'; even if applicable, 'we believe the insured's rejection must be presumed.'" *Grange*, supra, at 48–49, 21 OBR 331, 487 N.E.2d 310.

{¶ 30} Notwithstanding the narrow positing of the issue presented, the *Grange* court's syllabus broadly holds that the "uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals."

{¶ 31} In the instant case, the trial court seized upon the foregoing emphasized language, summarily agreeing with the defendants' contention that they were self-insurers "in the practical sense." The court deemed dispositive of the "self-insured" analysis the matching deductible/fronting agreement terms of the insurance contracts. As a result, the trial court concluded that these self-insurers are not required to comply with R.C. 3937.18's UM/UIM provisions. In so holding, the trial court extended *Grange* to non-bond holders, the net effect of which was to relieve such entities from complying with the R.C. 4509.45 et seq. provisions regarding proof of financial responsibility—for example, filing a certificate of self-insurance.

{¶ 32} Appellant argues that the trial court's reliance upon *Grange* was misplaced, as the bond situation in that case is readily distinguishable from the insurance scenario at issue here. Appellant also emphasizes the fact that neither AIG nor Pacific complied with R.C. 4509.45's "self-insurance" requirements because they failed to file certificates of self-insurance. As such, appellant argues, AIG and Pacific should not be considered self-insured. Specifically, appellant contends that the trial court erred in relying wholly upon the "in the practical sense" language of *Grange*, offering as its exclusive rationale the so-called matching deductible/fronting agreement/retained risk terms of the insurance contracts, which agreements are discussed below in detail.

{¶ 33} Appellant relies upon this court's decision in *Dalton v. Wilson*, Franklin App. No. 01AP–1014, 2002-Ohio-4015, 2002 WL 1813508,[3] in which we addressed nearly identical issues. The defendants, on the other hand, urge us instead to reconsider *Dalton.* However, as recently as March 31, 2003, this court continued to follow *Dalton.* See *Stout v. Travelers Prop. Cas. Ins. Co.*, 152 Ohio App.3d 355, 2003-Ohio-1643, 787 N.E.2d 725.

{¶ 34} In *Dalton*, this court examined an analogous situation involving insurance carriers that underwrote and issued various policies to plaintiff's employer and claimed that such policies were nothing more than "self-insurance" based upon "matching deductible" or "fronting" agreements. A "matching deductible" or "fronting" agreement is, in short, an arrangement whereby a corporate entity essentially rents an insurance company's licensing and filing capabilities in a particular state or states in order to comply with state financial responsibility laws. Id. at ¶ 26. In both *Dalton* and the instant case, premiums are paid by corporate entities to insurers which, in turn, file the proof of insurance required by Ohio's various governmental agencies. The insurer named in the governmental filings provides liability coverage on a "first dollar" basis; the liability limits "match" the deductible. In other words, the insurer files proof that the corporation is insured up to its matching or self-retained limit. In the event the insurer is required to satisfy a claim, the corporation, pursuant to an indemnity agreement, automatically reimburses the insurer in an amount up to the self-retained limit.

{¶ 35} The *Dalton* decision ultimately draws a distinction between insurers such as those present in the instant case, and bond principals or certificated self-insurers as contemplated by *Grange*, supra. *Dalton* comprehensively explains the distinction between insurance and "self-insurance":

{¶ 36} "In determining whether an entity is self-insured, courts look at who bears the risk of loss. 'Self-insurance is not insurance; it is the antithesis of insurance.' *Physicians Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.* (1988), 44 Ohio App.3d 157, 158, 542 N.E.2d 706. * * *

{¶ 37} " 'While insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting. Rather, in the self-insurance context, the risk is borne by the one [on] whom the law imposes it. The defining characteristic of insurance, the assumption of specific risks from customers in consideration for payment, is entirely absent where an entity self-insures. * * *'

---

3. Appeal denied by *Dalton v. Wilson*, 97 Ohio St.3d 1485, 2002-Ohio-6866, 780 N.E.2d 288, reconsideration denied in *Dalton v. Wilson*, 97 Ohio St.3d 1500, 2002-Ohio-7367, 780 N.E.2d 1023.

{¶ 38} "* * * [T]herefore, * * * 'self-insurance' is the legal equivalent of no insurance for purposes of the distribution of UM/UIM benefits in accordance with R.C. 3937.18(A)." Id. at ¶ 64–66, quoting *Jennings v. Dayton* (1996), 114 Ohio App.3d 144, 148, 682 N.E.2d 1070.

{¶ 39} *Dalton* distinguishes the facts present in both that and the instant case and that of a *Grange*-type situation involving a bond principal, which by virtue of statute complies with Ohio's financial responsibility laws; moreover, *Dalton* unequivocally refused to extend *Grange* "well beyond its holding." R.C. 4509.45(C); *Dalton*, supra, at ¶ 38. As we deem *Dalton* dispositive of the narrow issue presented before us, we quote its interpretation and application of *Grange* at length:

{¶ 40} "* * * The *Grange* court ultimately determined that [the employer] Refiners' status as a bond principal made it a self-insurer 'in a practical sense,' even though Refiners had not obtained a certificate of self-insurance. The court recognized that proof of financial responsibility may be satisfied by filing a surety bond without having to obtain a certificate of self-insurance.

{¶ 41} "In contrast, the * * * instant case do[es] not involve either bond principals or certificated self-insurer; rather, * * * *[it] involve[s] entities who entered into 'fronting/matching deductible agreements' with insurance companies in an apparent effort to avoid meeting the statutory requirements to qualify as a self-insurer. The issue of whether 'fronting/matching deductible agreements' constitute self-insurance was not addressed, or even contemplated, in Grange.* Thus, we find it improper to extend *Grange* to include as self-insurers entities who enter into 'fronting/matching deductible agreements.'

{¶ 42} "Further, we do not believe that the 'fronting/matching deductible agreement' * * * constitutes a self-insured scheme. We reiterate that [the employer] admits that it did not file a certificate of self-insurance in accordance with R.C. 4509.45 * * *. Despite its admitted failure to comply with the statutory requirements for invoking self-insured status, [the employer] seeks to declare itself a self-insurer for purposes of avoiding the requirements of the UM/UIM statute. It is our view that [the employer] cannot have it both ways." (Emphasis added.) Id. at ¶ 74–76.

{¶ 43} Specifically addressing the policy language at issue in that case, *Dalton* is factually indistinguishable for our purposes. This court stated:

{¶ 44} "Upon review of the policy language, including that contained in the 'Claims Services Contract' and the 'Deductible Agreement,' we conclude that the agreement between [the insurer and employer] constitutes an insurance policy. Both the 'Claims Services Contract' and the 'Deductible Agreement' refer to the policy as a 'policy of insurance.' Moreover, when a liability claim arises against

[the employer], [the insurer] is required to pay the entire loss and is then reimbursed by [the employer]. However, the ultimate risk for the loss remains with [the insurer], if [the employer] either refuses or is financially unable to reimburse [the insurer] for the loss." Id. at ¶ 77.

{¶ 45} Finally, *Dalton* concluded, as must we:

{¶ 46} "* * * [T]his type of reimbursement arrangement is [not] enough to make [the employer] 'self-insured in the practical sense.' Because [the employer] neither obtained a certificate of self-insurance certifying that it is of sufficient financial ability to pay judgments against it (as contemplated * * * [by *Grange* ] ), [the employer] may not be considered a self-insurer. * * *

{¶ 47} " 'It may be well and good and entirely lawful for a 'fronting agreement' * * * to spare [an entity] the expense and potential administrative quagmires of formal registration in every state, territory and country where it does business and for these 'devices' to provide [an entity] the use of [an insurer's] filings and claims service, but they do not paralyze or mute the walking and quacking duck of insurance coverage.' " (Citation omitted.) Id. at ¶ 77–78.

{¶ 48} In summary, as ultimately decided by this court in *Dalton*, while fronting, matching deductible and other reimbursement arrangements may well provide for ease of administration, such arrangements do not alleviate an entity's obligation to register formally as a self-insurer in states in which it chooses to conduct business. An insurance company may not avoid compliance with R.C. 3937.18 by claiming that the policy it issues to a corporate entity is "self-insurance" despite that entity's failure to comply with R.C. 4509.45. Furthermore, an insurance company may not avoid compliance with R.C. 3937.18 by simply claiming that the policy it issues to a corporate entity is "self-insurance" in direct contravention to the express terms and provisions of said policy.

{¶ 49} AIG alternatively contends that it qualifies as a "self-insurer" because a letter of credit issued by a reinsurer is tantamount to a bond and, therefore, satisfies the financial responsibility requirement of R.C. 4509.45. However, as appellant points out, AIG failed to file this letter of credit as such a "bond" in accordance with the statute and, accordingly, the rationale of *Dalton* applies with equal force.

{¶ 50} Finally, counsel for AIG next directs our attention to the December 13, 2002 case decided by the Ohio Supreme Court in *Hillyer v. State Farm Fire & Cas. Co.* (2002), 97 Ohio St.3d 411, 2002-Ohio-6662, 780 N.E.2d 262, for the proposition that the AIG policy is not an auto policy. Consistent with the *Dalton* court's treatment of the identical proposition advanced by the carrier of the commercial general liability policy, this issue should be addressed by the trial court for its determination in the first instance. As did the trial court in *Dalton*,

the trial court here limited its findings to a dispositive determination of the "self-insured" issue and, as a result, declined to determine all other issues. Therefore, upon remand, the trial court must determine the remaining issues, including, inter alia, whether the AIG policy constitutes a motor vehicle policy of insurance subject to the requirements of former R.C. 3937.18 and, if so, whether appellant qualifies as a "named insured" under the policy. If appellant is determined to be a "named insured" within the meaning of *Scott–Pontzer*, supra, and its progeny, the court must also visit remaining liability issues, i.e., whether there was a valid offer and/or rejection of UM/UIM coverage.

{¶ 51} Based upon the record before us, the trial court erred as a matter of law in finding that AIG and Pacific are "self-insurers in the practical sense," thereby precluding appellant's right to assert a claim for UM/UIM benefits under their respective policies. Accordingly, the first assignment of error is sustained.

{¶ 52} By her second and final assignment of error, appellant argues that the trial court erred in finding that there was no justiciable controversy as to AAIC based upon appellant's failure to show damages exceeding the monetary level necessary to trigger coverage under the AAIC policy.

{¶ 53} The trial court apparently granted AAIC's motion to dismiss based solely upon appellant's purported failure to prove that her damages would exceed $10,000,000, thereby triggering coverage under the AAIC policy in the event she were deemed to qualify as an insured. However, appellant directs our attention to an earlier entry journalized by the trial court by which it expressly prohibited the parties from addressing damage issues until such time as the coverage issue had been decided. Given the posture of this case upon remand, in our view, dismissal of AAIC was, at best, premature based solely upon the reason provided by the trial court. Assuming arguendo that appellant is ultimately deemed entitled to damages on remand, the trial court's outright dismissal of AAIC directly contravened its earlier order and, therefore, appellant should not be precluded from presenting evidence on damages.

{¶ 54} The second assignment of error is also sustained.

{¶ 55} Having sustained both assignments of error, we reverse the judgment of the trial court and remand this cause to that court to conduct further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BOWMAN and PEGGY BRYANT, JJ., concur.