OPINION
{¶ 1} This appeal involves claims for uninsured/underinsured motorist insurance coverage ("UM/UIM") based on legal principles established in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, which has since been partially overruled by Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph two of the syllabus. The basic issue on review is whether or not the injured party was an insured under the various automobile policies. Based on Galatis, an employee may only qualify as an insured under a business automobile liability policy if the employee was acting in the course and scope of employment at the time of the accident. At no point has the injured party alleged that the automobile accident occurred in the course and scope of employment. Judgment should have been granted in favor of the insurance companies in this case. Therefore, we must partially reverse the trial court's judgment in light of Galatis.
 {¶ 2} On July 14, 2001, Appellant/Cross-Appellee Cynthia Kim Hayman was a passenger on a motorcycle driven by Charles M. DiLoretto, Jr. Mr. DiLoretto lost control of the motorcycle on County Rd. 1, Warren Township, Jefferson County. He struck a guardrail, causing serious bodily injuries to Mrs. Hayman. Mr. DiLoretto was uninsured at the time of the accident.
 {¶ 3} At the time of the accident, Mrs. Hayman was employed by Zandex Corporation ("Zandex"). Zandex owned and was the named insured on a commercial general liability ("CGL") policy issued by Appellee/Cross-Appellant American Motorist Insurance Co. ("AMICO"). This policy will be referred to as the "AMICO CGL policy." This policy included business automobile liability coverage with UM/UIM coverage of $100,000 and medical payments of $5,000.
 {¶ 4} Zandex was also listed as an additional insured on a CGL policy issued to Preferred Nursing Home Owners Purchasing Group. This policy was issued by OHIC Insurance Co. ("OHIC"), and will be referred to as the "OHIC CGL policy."
 {¶ 5} Finally, Zandex owned a commercial umbrella liability policy issued by OHIC that acted as an umbrella automobile policy to the AMICO CGL policy and the OHIC CGL policy. This will be referred to as the "OHIC Umbrella policy."
 {¶ 6} Nowhere has it been alleged or shown at any stage of these proceedings that Mrs. Hayman was acting in the scope or course of employment at the time of the accident.
 {¶ 7} On December 14, 2001, Mrs. Hayman and her husband, Mr. Leroy Hayman, Sr., (collectively referred to as "the Haymans") filed a complaint in the Jefferson County Court of Common Pleas against Mr. DiLoretto (the tortfeasor), AMICO, OHIC, Nationwide Assurance Co., Colonial Insurance of Wisconsin, and The Health Plan, seeking coverage for damages arising out of the motorcycle accident.
 {¶ 8} In July and August of 2002, the Haymans, AMICO, and OHIC each filed motions for summary judgment and various responses to those motions. On October 1, 2002, the trial court overruled the Haymans' motion for summary judgment with respect to AMICO, granted AMICO's motion, and dismissed AMICO from the case. The trial court granted the Haymans' motion for summary judgment with respect to OHIC. The trial court held that Mrs. Hayman was an insured under the OHIC CGL policy and the OHIC Umbrella policy.
 {¶ 9} Both the Haymans and OHIC moved for reconsideration of the October 1, 2002 Judgment Entry. The trial court overruled both motions on October 29, 2002.
 {¶ 10} While these motions were pending in the trial court, the Haymans filed an appeal and OHIC filed a cross-appeal of the October 1, 2002 decision. These appeals were filed on October 20, 2002 and designated as Appeal No. 02 JE 45. The Haymans challenged the trial court's ruling with respect to the AMICO policy. OHIC disputed the trial court's rulings with respect to both OHIC policies. At a later point, OHIC filed a cross-appeal of the October 1 entry, merely seeking to preserve certain arguments in support of preserving its favorable judgment. However, the judgment entry of October 1, 2002 did not resolve all issues in this case and, in fact, specifically raised an additional issue as to damages. Thus, despite the fact that the entry purported to contain the language required by Civ.R. 54(B) to allow for an interlocutory appeal, the entry was insufficient in this regard. Therefore, judgment was not a final appealable order, and all notices of appeal were premature.
 {¶ 11} On November 26, 2002, OHIC filed an appeal of the October 29, 2002, judgment entry which overruled the motions seeking reconsideration of its October 1, decision. This judgment entry clarified its earlier entry and supported the "no just reason for delay" language as required by Civ.R. 54(B). In effect, the trial court's clarification of its earlier entry incorporated this entry, thus allowing a combined review of both. The OHIC appeal was designated as Appeal No. 02 JE 51. The two appeals were consolidated for review by this Court on January 27, 2003. As a matter of housekeeping, the filings under Appeal No. 02 JE 45 should have been dismissed upon consolidation of the two cases. Thus, we dismiss Appeal No. 02 JE 45 as duplicative.
 SUMMARY JUDGMENT STANDARD {¶ 12} This matter involves the trial court's determination of a number of motions for summary judgment. Appellate review of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. In accordance with Civ.R. 56, summary judgment is appropriate:
 {¶ 13} "[W]hen (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
 HAYMANS' TWO ASSIGNMENTS OF ERROR {¶ 14} The Haymans' two assignments assert that the trial court erred in granting summary judgment to AMICO. The Haymans make the traditional Scott-Pontzer argument that the AMICO policy defines "insured" as a corporation by using the word "you," and that Mrs. Hayman, as an employee, was covered under the policy because of the ambiguity of the word "you."Scott-Pontzer, 85 Ohio St.3d at 664, 710 N.E.2d 1116. This line of argument, as set forth in the Scott-Pontzer case, was rejected by Galatis, supra, except for those instances where the corporation's employees were acting within the course and scope of employment. Galatis held that:
 {¶ 15} "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. Additionally, where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id.,100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, at ¶ 62.
 {¶ 16} The Haymans do not here allege or attempt to demonstrate that Mrs. Hayman was acting within the course and scope of employment when the accident happened, despite the fact that they were given opportunities throughout this procedure. Therefore, there is no UM/UIM coverage.
 {¶ 17} The Haymans also argue that UM/UIM coverage should be imposed as a matter of law because AMICO failed to properly offer UM/UIM coverage to Zandex equal to the amount of the automobile liability coverage of the policy, as required by R.C. § 3937.18. Zandex only chose to pay for $100,000 of UM/UIM coverage, whereas the liability coverage limit was $1,000,000. Although Zandex did sign a rejection of coverage form, the Haymans believe that the form does not contain the elements of a proper rejection of UM/UIM coverage as set forth in Linko v. Indemn. Ins. Co. of N.Am. (2000), 90 Ohio St.3d 445, 739 N.E.2d 338.
 {¶ 18} Galatis did not specifically address this second issue. Nevertheless, the Haymans are prevented from making this argument on behalf of the policyholder (Zandex) because Mrs. Hayman was not acting in the course and scope of employment when the accident occurred. The Haymans' argument is premised on the specific language of former R.C. § 3937.18(A), which required an insurer to offer UM/UIM coverage to its insureds. The precise language of the statute is critical in determining what an insurer was actually required to offer to the insured with respect to UM/UIM coverage:
 {¶ 19} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
 {¶ 20} "(1) Uninsured motorist coverage, * * *
 {¶ 21} "(2) Underinsured motorist coverage, * * *."
 {¶ 22} The statute only required that UM/UIM coverage be offered to, "persons insured under the policy." (Emphasis added.) According to Galatis, "[w]hether someone is insured under an insurance policy should not be interpreted in favor of one who was not a party to the contract. * * * [T]he plaintiff who is not a party to the insurance contract is not in a position to urge a construction of the contract that would be detrimental to both parties to the contract[.]" Id. at ¶ 49. Galatis also reasoned that, "[a]bsent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos * * *." Id. at ¶ 39. It is clear that Mrs. Hayman was not a person insured under the policy at the time of accident because she was not in the course and scope of employment. If she was not a person insured under the policy, she has no standing to assert a violation of the offer/rejection provisions of former R.C. § 3937.18.
 {¶ 23} This reasoning is consistent with a number of appellate decisions that have been released since the appearance of the Galatis decision. See Sweeney v. National Union FireIns. Co., 2004-Ohio-6286, 8th Dist. No. 82143; Bogan v.Johnson, 2004-Ohio-422, 12th Dist. No. CA2003-04-010; Grant v.Graening, 2003-Ohio-7205, 9th Dist. No. 21564; Lutterbein v.Gonzales, 2003-Ohio-6286, 3rd Dist. No. 1-03-01. The Ohio Supreme Court implicitly approved of this approach to the issue by summarily reversing at least one appellate decision on the basis of Galatis where the lower court awarded UM/UIM coverage on the same theory used by the Haymans. See Morris v. Emerson,
2003-Ohio-2708, 5th Dist. No. 2002CA00414, reversed by In reUninsured and Underinsured Motorist Coverage Cases,100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077.
 {¶ 24} Although the Haymans assert at least five additional arguments on appeal, they are all based on the assumption that Mrs. Hayman is an "insured" under the AMICO CGL policy due to the ambiguity of the word "you," or the ambiguity of the meaning of "named insured" under a corporate policy. These arguments are no longer viable in light of the Galatis decision, at least with respect to employees who were not acting within the course and scope of employment at the time of accident. For these reasons, the Haymans' two assignments of error are overruled.
 OHIC'S TWO ASSIGNMENTS OF ERROR {¶ 25} In OHIC's first assignment of error, dealing with the OHIC CGL policy, OHIC argues that Mrs. Hayman was not acting within the course and scope of her employment at the time of the accident, and therefore (under Section D(4) and D(7) of the OHIC CGL policy), she was not an insured under the policy at the time of accident. Even more fundamentally, OHIC argues that the OHIC CGL policy is not an automobile policy at all, that it contains no UM/UIM coverage, and that it was not required to offer such coverage under R.C. § 3937.18. The trial court concluded the opposite; that the OHIC CGL policy was an automobile liability policy because the word "auto" is defined in the policy, and because there is an automobile exclusion in the policy. The trial court then concluded that the OHIC CGL policy failed to properly offer UM/UIM coverage, and that UM/UIM coverage was imposed as a matter of law.
 {¶ 26} On appeal, the Haymans do not address the very fundamental issue that the OHIC CGL policy does not appear to be an automobile liability policy and would not have been subject to the requirements of R.C. § 3937.18. Assuming arguendo, though, that the policy is subject to R.C. § 3937.18, Mrs. Hayman cannot be viewed as an "insured" under the policy in light of theGalatis decision.
 {¶ 27} OHIC contends that the OHIC CGL policy, Section D(7), itself limits coverage to employees in the course and scope of employment. OHIC is correct, and even if the policy did not contain this restriction, the Galatis holding applies the "course and scope of employment" restriction as a matter of law to all corporate automobile policies whether or not the policy itself contains similar language. Galatis at ¶ 62. As there is no question in the record that Mrs. Hayman was not acting in the course and scope of employment at the time of accident, she was not an insured under the policy.
 {¶ 28} OHIC also argues in its second assignment of error that there is no coverage under the OHIC Umbrella policy because it requires that there first be coverage under a "basic insurance" policy as set forth in the policy definitions. "Basic insurance" is defined in the umbrella policy as: "only the policies described in the Schedule of Basic Insurance for which Limits of Coverage amounts are shown in that Schedule." Section D(2) of the policy states:
 {¶ 29} "2. Who is Protected For Auto-Related Claims
 {¶ 30} "Any person or organization who is an insured under your automobile `basic insurance' for the use of an `auto' is an insured under this agreement."
 {¶ 31} OHIC contends that Mrs. Hayman is not an insured under any "basic insurance" policy (which includes both the AMICO CGL policy and OHIC CGL policy), and that she cannot therefore be an insured under the umbrella policy. The Haymans did not offer a response to this argument, and OHIC is correct. OHIC's two assignments of error are, therefore, sustained.
 {¶ 32} In conclusion, this appeal may be resolved solely through the principles set forth in Galatis as applied to the three insurance policies under review. It is clear that Mrs. Hayman's theories of recovery are based on the assumption that she, as an employee of Zandex, is an insured person under the three policies, even though she never attempted to raise or prove that she was acting in the course and scope of employment at the time of accident when she was given the opportunity. UnderGalatis, though, an employee may no longer claim UM/UIM coverage under a corporate automobile policy unless the accident occurred while that employee was acting in the course and scope of employment. By extension, an employee is not able to claim UM/UIM coverage as a matter of law based on an alleged violation of the offer/rejection provisions of R.C. § 3937.18 unless the accident occurred in the course and scope of that person's employment. Mrs. Hayman is not covered by any of the three policies under review, and the trial court should have ruled in favor of AMICO and OHIC on all issues. The trial court granted summary judgment to AMICO, and this part of the judgment is affirmed. The trial court ruled against OHIC with respect to both the OHIC CGL policy and the OHIC Umbrella policy, and these aspects of the trial court's decision are hereby reversed and summary judgment is granted in favor of OHIC.
Donofrio, J., concurs.
DeGenaro, J., dissents; see dissenting opinion.