OPINION
{¶ 1} Appellant, Kimberly Swango, individually and as executrix of the estate of Lois J. Porco ("decedent"), appeals from a judgment of the Portage County Court of Common Pleas, granting partial summary judgment to appellee, Cincinnati Insurance Companies.[1] For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} This matter arises from decedent's death and severe injury to her son, John E. Porco ("John"), caused by a motor vehicle accident on July 9, 2000. Danielle R. Bridenstine ("Bridenstine") apparently failed to yield at a stop sign, causing the collision.
 {¶ 3} Appellant is decedent's daughter.
 {¶ 4} At the time of the accident, decedent was employed by Dairy Mart Convenience Stores, Inc. ("Dairy Mart"), which was insured by appellee. Appellee issued three separate policies to Dairy Mart, which were effective on the date of the accident. The business auto policy, number CAP 770 23 98, contained language that unambiguously restricted coverage to employees acting while in the course and scope of employment. The parties do not dispute that decedent was not acting within the scope of employment when the accident occurred. She was returning from a camping trip with John.
 {¶ 5} The commercial general liability policy issued by appellee to Dairy Mart, number COP 231 41 00, does not identify any motor vehicle as being under its coverage.
 {¶ 6} The commercial umbrella policy issued by appellee to Dairy Mart, number CCC 443 42 44, was restricted to those acting "* * * within the scope of their duties [as employees] * * *."
 {¶ 7} Ms. Swango was employed by Pasco, Inc., dba Automated Tracking, Inc. ("Automated Tracking"), which was also insured by appellee. Appellee issued two policies to Automated Tracking, effective on the date of the accident, including a commercial automobile liability policy, number CCP 501 37 97 AWR, and a commercial umbrella policy, number CCC 442 07 14. Both policies contained language that unambiguously restricted coverage to employees acting within the scope of their employment.
 {¶ 8} Appellant, individually and as executrix of her mother's estate, filed a complaint against, inter alia, appellee on April 13, 2002, in connection with the policies issued by appellee to Dairy Mart. Appellant requested a declaratory judgment to establish uninsured motorist coverage ("UIM") for her mother and John under those policies issued to Dairy Mart. The complaint demanded the limits of the UIM coverage.
 {¶ 9} The original complaint was amended four times to bring in additional family members as plaintiffs and additional insurers of various family members as defendants, underScott-Pontzer and Ezawa theories of liability. See, e.g.,Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, overruled by Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849; Ezawa v. Yasuda Fire MarineIns. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124, overruled byGalatis. For example, John and Jeffrey Porco, sons of decedent, were added as plaintiffs. Also, in an amended complaint, appellant alleged that decedent and John were insured by appellee under policies issued through Automated Tracking. The complaint requested a declaratory judgment to establish coverage.
 {¶ 10} All complaints were answered, and appellee and other defendants put forth various affirmative defenses.
 {¶ 11} Appellee moved for summary judgment against appellant on September 16, 2002. Likewise, on September 17, 2002, appellant moved for partial summary judgment against appellee, to establish UIM motorist coverage for decedent and John under the policies issued by appellee to Dairy Mart and Automated Tracking. Each party replied to the other's motions, and various surreplies were also filed. Numerous other motions for summary judgment were filed among the parties, but only those mentioned above are relevant to the instant appeal.
 {¶ 12} On May 27, 2003, the trial court denied appellant's motion for partial summary judgment and granted summary judgment in favor of appellee. The trial court stated, "[p]laintiffs move for partial summary judgment against [appellee] to establish uninsured/underinsured motorist coverage under decedent's employer's policies issued by [appellee], pursuant to the rule inScott-Pontzer.
 {¶ 13} "At the time of the accident decedent was employed by Dairy Mart, which was insured by three separate policies issued by [appellee]. The business auto policy issued by [appellee], unlike the auto policy in Scott-Pontzer, contains language that unambiguously restricts coverage to employees acting `while in the course and scope of employment.' The decedent was not acting within the course or scope of her employment when the accident occurred. Thus, no coverage exists for Plaintiffs under [appellee's] business auto policy issued to Dairy Mart.
 {¶ 14} "The commercial general liability policy issued by [appellee to Dairy Mart] does not identify any motor vehicle as being under its coverage. Thus, such policy cannot serve as proof of financial responsibility. That being the case, R.C.3937.18(L)(1) excludes uninsured/underinsured motorist coverage. Thus, no coverage exists for Plaintiffs under [appellee's] commercial general liability policy issued to Dairy Mart.
 {¶ 15} "The commercial umbrella policy issued by [appellee to Dairy Mart] does not contain any uninsured/underinsured motorist coverage, as such coverage was properly rejected by Dairy Mart. Further, coverage of such policy is restricted to those acting `within the scope of their duties.' The decedent was not acting within the scope of her duties when the accident occurred. Thus, no coverage exists for Plaintiffs under [appellee's] commercial umbrella policy issued to Dairy Mart. * * *
 {¶ 16} "[Appellant] seeks partial summary judgment against [appellee] to establish uninsured/underinsured motorist coverage under policies issued by [appellee] to [Ms. Swango's] employer, Automated Tracking.
 {¶ 17} "Both the commercial automobile liability policy and the commercial umbrella policy issued by [appellee] to Automated Tracking, unlike the auto policy in Scott-Pontzer, contain language that unambiguously restricts coverage to employees `while acting within the scope of their duties [as employees].' [Ms. Swango] was not acting within the course or scope of her employment when the accident involving the decedent occurred. Thus, no coverage exists for [appellant] under either of [appellee's] policies issued to Automated Tracking."
 {¶ 18} Accordingly, the trial court denied appellant's motion for partial summary judgment and granted appellee's motion for summary judgment.
 {¶ 19} From this judgment, appellant appeals and sets forth the following assignments of error for our consideration:
 {¶ 20} "[1.] The trial court incorrectly found that no UM/UIM insurance coverage existed for Plaintiffs under the commercial umbrella policy (Policy Number CCC 4434244) issued by Defendant-Appellee, Cincinnati Insurance Companies, to Plaintiffs' decedent's employer, Dairy Mart.
 {¶ 21} "[2.] The trial court incorrectly found that no UM/UIM insurance coverage existed for [Ms.] Swango under the Commercial Umbrella Policy (Policy Number CCC 442-07-14) issued by Defendant-Appellee, Cincinnati Insurance Companies, to [Ms.] Swango's employer, Automated Tracking, Inc."
 {¶ 22} At this time, we note that appellee argues an incorrect standard of review. According to appellee, a reviewing court must affirm a trial court's judgment if there exist any valid grounds in support of the judgment.
 {¶ 23} Instead, an appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389; Leibreich v. A.J. Refrigeration, Inc.,67 Ohio St.3d 266, 268, 1993-Ohio-12; Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
 {¶ 24} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 25} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 26} We will address appellant's two assignments of error in a consolidated fashion because they implicate similar issues. Appellant argues that decedent and John were entitled to coverage under appellee's commercial umbrella policies issued to Dairy Mart and to Automated Tracking, and, thus, the trial court erred by granting summary judgment to appellee. After the parties filed their appellate briefs, the Supreme Court of Ohio issued its decision in Galatis. Galatis dramatically departed from the decisions in Scott-Pontzer and Ezawa. Appellant's claims for coverage may have succeeded under Scott-Pontzer and Ezawa,
but we must apply current law and examine this matter under the logic of Galatis. Assuming arguendo that the umbrella policies issued to Dairy Mart and Automated Tracking contained UM/UIM coverage, appellant's arguments are not well-taken under current law.
 {¶ 27} In Galatis, the Court stated, "[t]he general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles." Id. at ¶ 20, citingKing v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. "It is settled law in Ohio that a motor vehicle operated by an employee of a corporation in the course and scope of employment is operated by and for the corporation and that an employee, under such circumstances, might reasonably be entitled to unisured motorist coverage under a motor vehicle insurance policy issued to his employer." Galatis at ¶ 20, citing King at 213. Further, "* * * an employee's activities outside the scope of employment are not of any direct consequence to the employer as a legal entity. An employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy." Galatis at ¶ 20.
 {¶ 28} The Court then construed the policy's ambiguity in favor of the policy holder, the employer. In doing so, the Court noted that "[t]he purpose of a commercial auto policy is to protect the policy holder." Id. at ¶ 37, citing King. The Court determined that "[p]roviding uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policy holder's interests." Galatis at ¶ 37, citing Cook v. Kozell (1964),176 Ohio St. 332, 336.
 {¶ 29} The Court determined that "Scott-Pontzer ignored the intent of the parties to the contract. Absent contractual language to the contrary, it is doubtful that either an insurer or a corporate policy holder ever conceived of contracting for coverage for offduty employees occupying noncovered autos, let alone the family members of the employees." Id. at ¶ 39.
 {¶ 30} Accordingly, Galatis overruled Scott-Pontzer andEzawa. Pursuant to Galatis, absent contractual language otherwise, UM/UIM coverage extends only to an employee in the scope of employment and never to employees outside the scope of employment or to family members of employees. Id. at syllabus.
 {¶ 31} In the matter sub judice, the parties do not dispute that decedent was not acting within the scope of employment at the time of the accident. Assuming arguendo that the umbrella policy issued to Dairy Mart contained UM/UIM coverage, the decedent was therefore not covered at the time of the accident. See, e.g., Galatis. Even if decedent were in the scope of her employment at that time and thus covered, John would only be entitled to coverage under a Scott-Pontzer theory of liability. As such, current law under Galatis precludes any coverage extending to John. The trial court thus correctly determined that decedent was not an insured at the time of the accident and that decedent and John were not entitled to any coverage through the policy issued to Dairy Mart. The trial court properly granted summary judgment to appellee on this issue.
 {¶ 32} Likewise, there is no assertion that Ms. Swango was acting within the scope of her employment at the time of the accident or that she was involved in the accident at all. Again, assuming arguendo that the umbrella policy issued to Automated Tracking contained UM/UIM coverage, Ms. Swango was not covered at the time of the accident. See, e.g., Galatis. Even if Ms. Swango were in the scope of her employment at that time and thus covered, decedent and John would only be entitled to coverage under a Scott-Pontzer theory of liability. As such, current law under Galatis precludes any coverage extending to decedent or John. Accordingly, the trial court correctly determined that Ms. Swango was not an insured at the time of the accident and that decedent and John were not entitled to any coverage through the policy issued to Automated Tracking. The trial court properly granted summary judgment to appellee on this issue.
 {¶ 33} In summary, appellant's two assignments of error are without merit. We hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] For the purposes of this opinion, we will refer to appellant, in her individual capacity, as "Ms. Swango." Appellant, individually and as executrix of her mother's estate, will be referred to simply as appellant.